James H.M. Sprayregen, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

        - and -

David R. Seligman, P.C. (*pro hac vice* pending)
Ryan Blaine Bennett (*pro hac vice* pending)
Paul Wierbicki (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Counsel to the Foreign Representative

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| JAPAN AIRLINES CORPORATION, <u>et al.</u>, | ) Case No. 10-[_____] |
| Debtors in a Foreign Proceeding[1] | ) |
| | ) |
| Debtors. | ) |
| | ) (Joint Administration Requested) |

**VERIFIED PETITION FOR**
**RECOGNITION AND CHAPTER 15 RELIEF**

Eiji Katayama, in his capacity as the foreign representative (the "<u>Foreign Representative</u>") of the above-captioned debtors (collectively, the "<u>Debtors</u>"), whose corporate reorganization proceedings under Japanese law currently are pending before the Tokyo District Court, Civil Department No. 8 (the "<u>Japan Proceeding</u>"), respectfully submits this

---

[1] The Debtors in these chapter 15 cases are:  Japan Airlines Corporation, Japan Airlines International Co., Ltd., and JAL Capital Co., Ltd.  The location of the Debtors' corporate headquarters and the service address for all of the Debtors is:  JAL Building, 2-4-11 Higashi Shinagawa, Shinagawa-ku, Tokyo, Japan, Attn:  Legal Department.

verified petition (the "<u>Petition</u>") for recognition by this Court as the Debtors' "foreign representative" as defined in section 101(24) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and for recognition of the Japan Proceeding as a "foreign main proceeding" pursuant to sections 1515, 1517 and 1520 of the Bankruptcy Code.

In support of the Petition, the Foreign Representative has filed contemporaneously herewith the *Declaration of Eiji Katayama* (the "<u>Katayama Declaration</u>"), which is incorporated herein by reference. In addition, the Foreign Representative also has filed contemporaneously herewith the *Declaration of Atsuro Nishi in Support of Ex Parte Application for an Order Granting (A) Provisional Relief and Injunction and (B) Scheduling Hearing* (the "<u>Nishi Declaration</u>") which is incorporated herein by reference.[2]

## **Preliminary Statement**

1.      Japan Airlines Corporation ("<u>JALC</u>") and its subsidiaries and affiliates operate Japan Airlines, Japan's flagship air carrier and Asia's largest airline by revenue. JALC and its subsidiaries and affiliates carry passengers and cargo to destinations worldwide and enjoys an unparallel global reputation. JALC and two of its wholly-owned subsidiaries, Japan Airlines International Co., Ltd. ("<u>JALI</u>") and JAL Capital Co., Ltd. ("<u>JCAP</u>"), are the three Debtors in these chapter 15 cases (collectively, the "<u>Chapter 15 Cases</u>").

2.      On October 29, 2009, JALC began advance consultations with the Enterprise Turnaround Initiative Corporation of Japan ("<u>ETIC</u>"), a fund established by the Japanese government to help revive firms with state-guaranteed loans, regarding the restructuring of its debt. Eventually, JALC developed a global restructuring plan intended to enable JALC and the

---

[2]      In further support of the Petition, the Foreign Representative has filed as <u>Exhibit 1</u> attached hereto the English-translated form of public announcement issued by the Debtors, which provides additional details regarding the Debtors and the Japan Proceeding.

K&E 16165153.20

other Debtors to return to profitability through a comprehensive court-supervised restructuring with ETIC's support.

3. To effectuate this restructuring, on January 19, 2010 (prevailing Tokyo time) the Debtors voluntarily filed for commencement of a corporate reorganization proceeding in the Tokyo District Court under the Corporate Reorganization Act of Japan (*Kaisha Kosei Ho*) (the "JRA"). In connection with commencement of the Japan Proceeding, the Tokyo District Court appointed the Foreign Representative and ETIC as trustees (collectively, the "Trustees") in the Japan Proceeding, with full authority to administer the Debtors' assets and, ultimately, formulate a plan of reorganization.

4. In the Japan Proceeding, the Trustees intend to obtain the approval of the relevant affected creditors, and confirmation by the Tokyo District Court, of a debt restructuring plan. Pursuant to the commencement order entered by the Tokyo District Court, the Trustees received authority to pay and honor outstanding obligations to the Debtors' customers, vendors, employees and business partners in the ordinary course of business. Consistent therewith, the Trustees intend to honor such obligations, including, without limitation, paying any trade claims as and when such claims come due, and continuing the Debtors' frequent flyer program (i.e., JAL Mileage Bank program) to preserve their customers' mileage points and loyalty awards. To ensure sufficient liquidity to satisfy these obligations, ETIC and the Development Bank of Japan ("DBJ") have committed to provide the Debtors approximately $5 billion of postpetition financing to effectuate the reorganization and to ensure that the Debtors maintain their businesses and safe flight operations without disruption during the pendency of the Japan Proceeding.

5.     The restructuring contemplated to be undertaken in the Japan Proceeding will achieve a significant de-leveraging of the Debtors' balance sheets, reducing billions of dollars of debt.  The Debtors anticipate that they will emerge from this restructuring process as stronger, more competitive companies and believe that the benefits to be gained from the restructuring process will enable the Debtors to remain a premier global air carrier.

6.     However, pending the development and approval of the restructuring plan by the Tokyo District Court, the Debtors require the protection afforded to foreign debtors pursuant to chapter 15 of the Bankruptcy Code for their valuable assets in the United States, which include, among other things, aircraft and related component parts, and interests in certain real estate at John F. Kennedy International Airport in New York, New York and Los Angeles International Airport in Los Angeles, California.  In addition, as more fully described in the Katayama Declaration and the Nishi Declaration, the Debtors require certain chapter 15 protections to stay certain litigation currently pending against them in the United States that could threaten to disrupt their orderly restructuring in the Japan Proceeding.  The Debtors also require the protections of chapter 15 to ensure smooth operations without disruption.  Protection of the Debtors' United States assets, a stay of pending litigation, and ensuring no operational disruption will ensure that the Debtors' restructuring in the Japan Proceeding runs smoothly.

7.     JALC's assets include equity interests in Japan Airlines International Co., Ltd. ("JALI"), and JAL Capital Co., Ltd. ("JCAP,"), the other Debtors in the Chapter 15 Cases. JALC itself does not own any assets in the United States.  JALI is the Debtors' global operating entity and holds substantially all of the Debtors' operating assets, including the Debtors' assets in the United States for which the Debtors' seek the protections of chapter 15.  JALI's Managing Executive Officer for the Debtors' U.S. operations is Mr. Atsuro Nishi, who presides over those

operations from JALI's corporate offices located in New York, New York. JCAP leases certain aircraft from third-party aircraft lessors and sub-leases this aircraft to JALI.

8.     To better facilitate an efficient corporate restructuring in the Japan Proceeding, pursuant to this Petition, the Foreign Representative now seeks recognition of himself as the Debtors' "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and of the Japan Proceeding as a "foreign main proceeding," within the meaning of section 101(23) of the Bankruptcy Code.

## Jurisdiction

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

10.    This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the Japan Proceeding under section 1515 of the Bankruptcy Code.

11.    Venue is proper pursuant to 28 U.S.C. § 1410(1) and (3).

12.    The statutory bases for relief are sections 1504, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## Background

### I.     The Debtors' Business

13.    In operation since 1951, the Debtors and their non-debtor affiliates are one of the world's largest air carriers, providing air transportation, cargo, and other transportation related-services to millions of customers around the world.  During 2009, the Debtors provided international passenger service to approximately 11 million passengers and domestic passenger service to approximately 41 million passengers.  The Debtors and their affiliates also are a member of the Oneworld global alliance in which they participate with other member airlines in

5

issuing tickets, code-share flights, mileage programs and other similar services.  The Debtors and their non-debtor affiliates employ approximately 50,000 employees, approximately 92% of which are union-represented under eight separate collective bargaining agreements.

14.     The Debtors' domestic passenger business is the largest in Japan, operating approximately 930 flights daily from over 60 airports.  The Debtors also have a strong international presence, including hubs in London, Beijing, New York, Los Angeles and Hong Kong.  The Debtors' international passenger business maintains a network serving 159 cities in 34 countries with approximately 4,000 flights weekly on 258 routes.  The Debtors' air freight business also is substantial, having carried approximately 13.948 billion ton-kilometers on international routes and 5.854 billion ton-kilometers on domestic routes in 2009 alone.

15.     Although the Debtors' airline scheduled passenger business is their chief source of revenue, the Debtors also derive income from certain ancillary sources, including: (a) transportation of air freight on certain domestic and international routes; (b) leasing of aircraft and aircraft accessories; (c) fuel sales to other air carriers; and (d) sales of transport equipment, travel goods, food and beverages and other similar goods.

## II.     The Debtors' Capital Structure

16.     The Debtors' principal capital structure consists of certain secured credit facilities, unsecured bonds, and equity.  As of the date hereof (the "Petition Date"), the Debtors' total amount of outstanding debt was approximately ¥2,549 billion, or $28 billion.

### A.     The Debtors' Secured Debt Obligations

17.     The Debtors' secured debt obligations include debt:  (a) under their principal secured credit facilities, the lenders under which are, among others, Mitsubishi UFJ Financial Group, Inc, UFJ Financial Group Inc., Sumitomo Mitsui Financial Group, Inc., and the DBJ; (b) secured by the Debtors' aircraft and aircraft equipment.  Specifically, as of March 31, 2009,

6

the Debtors had approximately ¥696.39 billion ($7.09 billion) of secured debt outstanding, with varying maturity dates between 2010 to 2023, at a weighted-average interest rate of 1.88%.

### B. The Debtors' Unsecured Bond Obligations

18. In addition to their secured debt, the Debtors have certain tranches of outstanding unsecured bonds.

- **Convertible Bond Issuance.** The Debtors have zero-coupon convertible bond obligations of ¥20.23 billion ($205.94 million) denominated in euro-yen, due in 2011.[3] The bonds are convertible into shares of common stock of JALC at a conversion price of ¥398.7 per share during the conversion period from April 19, 2004 to March 11, 2011. The conversion price per share decreased from ¥440 as a result of the issuances of 750 million new shares of common stock on July 27, 2006, and August 28, 2006.

- **Japanese Yen-Denominated Bonds.** In addition, the Debtors issued ¥82.00 billion ($834.78 million) in yen-denominated bonds, with maturity dates ranging between 2008 to 2018, and interest rates ranging from 1.49% to 3.40%.

### C. Equity

19. JALC is a publicly-traded company listed on the Tokyo Stock Exchange, the Osaka Stock Exchange, and the Nagoya Stock Exchange under the symbol 9205. As of September 30, 2009, JALC had approximately 2.7 billion shares outstanding. JALC also has approximately 614 million shares of preferred stock outstanding. In addition, JALC's American depository receipts ("ADRs") trade over the counter under the symbol JALSY. JALC's depository for its ADRs is the Bank of New York Mellon. As of January 1, 2010, JALC had approximately 546.5 million ADRs outstanding.

---

[3] The original issuance value of the convertible bonds was ¥100 billion ($928.20 million). The Debtors' convertible bond holders had the right to exercise early redemption at par value on March 25, 2007. Approximately ¥79.77 billion ($675.66 million) in bonds were redeemed, leaving approximately ¥20.23 billion ($205.94 million).

### III.    Events Giving Rise to the Japan Proceeding

20.     Like many airlines with global operations, the Debtors — despite maintaining excellent levels of operating performance, customer service, and safety — have struggled to maintain profitability over the years, having undergone multiple out-of-court restructurings.[4] The Debtors' financial difficulties are due to a variety of circumstances.  On the revenue side, the Debtors have suffered from low customer demand for air travel for much of the past decade due to a variety of geopolitical and other events beyond the Debtors' control, including:   the aftermath of the September 11, 2001 and the more recent terrorist attacks around the world; the commencement of the Iraq war and the military activities in Afghanistan; the outbreak of various epidemics including sudden acute respiratory syndrome (SARS) and the H1N1 influenza virus; and the recent global financial crisis, recession, and increased global commodity market volatility that began in mid-2008.  These geopolitical and other events affect the Debtors more than other airlines given the Debtors' large international presence and focus on international customers.   At the same time, the continued increase of Internet-based ticket sales, price transparency and the resultant downward pressure on ticket prices have further impaired the Debtors' declining revenues.

21.     On the cost side, historically, the Debtors have been plagued by high structural and operating costs, including extensive pension and wage liabilities, unprofitable domestic routes, and high aircraft maintenance and fuel costs.  The fact that the Debtors maintain a large international presence requires higher operational costs and makes them more susceptible to

---

[4]    This Court itself and others have presided over some of the largest airline reorganizations over the past decade.  See, e.g., In re Delta Air Lines, Inc., Case No. 05-17923 (CGM) (Bankr. S.D.N.Y. Sept. 14, 2005), In re Northwest Airlines Corp., Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Sept. 14, 2005); see also In re Alitalia Linee Aeree Italiane S.p.A., Case No. 08-14321 (BRL) (Bankr. S.D.N.Y. Nov. 3, 2008); In re UAL Corp, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002).

K&E 16165153.20

certain cost increases, particularly those relating to fuel.  With its declining revenues and increased costs, the Debtors have suffered losses for the past several years.

**IV.    Restructuring Efforts Prior to Commencement of the Japan Proceeding**

22.    In response to their historical poor financial performance, the Debtors mounted a comprehensive cost-reduction campaign.  The Debtors downsized their workforce, instituted salary reductions, reduced certain funds allocated to retirement benefits, and adjusted its fleet and route structure to better match their aircraft with appropriate routes.  For example, the Debtors substituted smaller Boeing 777s in place of the jumbo Boeing 747-400s on the Debtors' routes between Tokyo's Narita Airport and New York's John F. Kennedy International Airport and San Francisco's International Airport, as well as between Tokyo's Haneda Airport and Shanghai.  In addition, in February 2008, the Debtors began introducing certain Embraer 170 aircraft, a strategic small-scale and more efficient aircraft, on certain of its domestic routes.  The Debtors undertook similar downsizing initiatives in their international cargo division.  For example, the Debtors decommissioned many of their traditional Boeing 747 freighters in favor of medium-sized Boeing 767 freighters, and also suspended cargo flights on their New York route as of January 2009.  The use of smaller more efficient aircraft better complimented the reduced demand for the Debtors' international flights and cargo shipments and improved the Debtors' operating efficiency and profitability.

23.    Further, the Debtors attempted to improve their balance sheet and liquidity.  In 2001 and 2003, the Debtors applied for and received emergency financing in the amount of ¥260 billion from the DBJ.  In addition, as the airline industry began to consolidate, the Debtors followed suit by merging with Japan Air Systems, Japan's third-largest airline, in 2002, to improve operating efficiency through economies of scale.  Moreover, to bolster shareholder

equity, the Debtors also commenced a public offering of shares in 2006 worth ¥140 billion and a private offering in 2008 worth ¥150 billion.

24.     Unfortunately, the Debtors' cost-cutting and liquidity efforts were unable to keep pace with skyrocketing fuel, maintenance, personnel, legacy, and other costs.  The Debtors continued to post losses and suffered from low liquidity levels.  Ultimately, in the fall of 2009, the Debtors commenced alternative dispute resolution procedures specialized for the turnaround of distressed corporations under the auspices of the Japan Ministry of Justice and the Japan Ministry of Economy, Trade and Industry, pursuant to the Act on Special Measures for Revitalization of Industrial Vitality and Innovation of Industrial Activities.  In these alternative dispute resolution procedures, the Debtors were able to discontinue interest payments on their bank debt while they attempted to negotiate an out-of-court restructuring with their lenders.  Ultimately, however, the Debtors determined that it would be in their best interests and all other stakeholders to undertake a court-supervised restructuring of their balance sheet and operations.

## V.     The Japan Proceeding

25.     To undertake a comprehensive court supervised restructuring, the Debtors commenced the Japan Proceeding pursuant to the JRA, Japan's corporate rehabilitation law for large companies, such as the Debtors.  As further described in the Katayama Declaration, the JRA was initially modeled on Chapter X of the United States Bankruptcy Act of 1898 and was amended in 2002 in an effort to facilitate more efficient and expeditious court-supervised restructurings for larger companies.

### A.     Proceedings Under The Japanese Corporate Reorganization Act

26.     Under the JRA, a company commences reorganization proceedings by submitting a written petition with the applicable Japanese District Court.  Both the Tokyo and Osaka District Courts have jurisdiction over any corporate restructuring case pursuant to the JRA.

10

### 1. Automatic Stay Under the JRA

27. Once the Japanese court issues the formal commencement order, various restrictions are imposed upon the rights and interests of creditors, lien holders, equity holders, and other parties in interest. Specifically, such parties are prohibited from attaching and executing liens against a debtor's assets, resorting to foreclosure and other remedies, exercising rights of setoff, and commencing or continuing litigation against a debtor on account of prepetition obligations.

### 2. Appointment of the Trustees

28. The Japanese court's commencement order, in addition to staying creditors' exercise of actions against a debtor's assets, designates one, or multiple, trustees who assume full responsibility for managing the company through formulation, confirmation and full performance of a corporate reorganization plan. Although the 2003 amendments to the JRA clarified that former directors not otherwise responsible for a debtor's financial distress may be appointed as trustee, the Japanese court generally will appoint a third party or parties to serve as trustee and administrator of the debtor's assets. Further, under the JRA, a trustee is vested with powers to operate the debtor's business and to administer and dispose of the debtor's property, regardless of location.

### 3. Plan of Reorganization

29. Within one year of entry of the commencement order—which period may be extended twice for cause shown—the trustee must formulate and submit a formal plan of reorganization to the Japanese court presiding over the restructuring. The plan is then submitted to the debtor's creditors (and stockholders if the debtor's assets exceed its liabilities) for formal approval. As is the case under the Bankruptcy Code, only those creditors that have timely filed a

K&E 16165153.20

proof of claim before the claims bar date established by the court in the commencement order are eligible to vote on and receive distributions under the plan.

30.     The JRA establishes the applicable voting requirements to obtain formal approval of the reorganization plan by the debtor's creditors.  Generally, the applicable voting percentages required to confirm a plan depend upon the plan's treatment of affected creditors and, in addition, whether the plan proposes a restructuring versus a liquidation of the debtor's businesses.  In general, the plan must be approved by the following creditor classes:

- a majority of the debtor's unsecured creditors by aggregate claim amount; and

- three-fourths or more of the aggregate claim amount of the debtor's secured creditors if the reorganization plan proposes to discharge a part or all of such creditors' secured claims or otherwise.

31.     Although the JRA provides for priority treatment or even, in certain instances, prepayment of the prepetition obligations of certain creditors, such as employees and certain critical suppliers, the restructuring plan generally can compromise the prepetition obligations owing to, among other parties, secured creditors.

32.     If the votes for plan confirmation are not obtained, the court must either terminate the reorganization proceedings, or, in the alternative, confirm the plan over dissenting creditors. The JRA contemplates a procedures similar to the Bankruptcy Code's "cram down" mechanism, by which the Japanese court unilaterally can amend the plan to provide for, among other things: (a) a secured creditor's retention of liens;  (b) a secured creditor's receipt of a liquidation distribution; (c) satisfaction of a claim pursuant to a court-determined "fair market value"; or (d) such other treatment of a creditor that the court determines is "fair and equitable."

12

**B.      Commencement of the Japan Proceeding**

33.      On January 19, 2010, the Debtors filed petitions in the Tokyo District Court requesting commencement of the Japan Proceeding.  Upon the filing, the Tokyo District Court issued an order commencing the Japan Proceeding.  The order of the Tokyo District Court is attached hereto as Exhibit 2.  In addition, an English translation of the order entered by the Tokyo District Court is attached hereto as Exhibit 3.  The order of the Tokyo District Court became effective when issued.  Pursuant to the order, the Trustees, including the Foreign Representative, were appointed as the administrators of the Debtors' assets and businesses.

34.      Under the JRA, the Foreign Representative is entitled to file this Petition for recognition of the Japan Proceeding.  Additionally, the Tokyo District Court expressly authorized the Foreign Representative to apply to this Court for recognition of the Japan Proceeding and to seek this Court's assistance in facilitating the Debtors' restructuring.[5] Accordingly, the Foreign Representative should qualify as a "foreign representative" within the meaning of sections 101(24) and 1517(a)(2).

<div align="center">

**Relief Requested**

</div>

35.      The Foreign Representative respectfully requests the entry of an order granting recognition and protection pursuant to sections 1504, 1515, 1517 and 1520 of the Bankruptcy Code, recognizing the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code and recognizing the Japan Proceeding as a "foreign main proceeding" pursuant to sections 1517(a) and (b)(1) of the Bankruptcy Code.

---

[5]      A copy of the English translation of the certificate of the Tokyo District Court authorizing the Foreign Representative to commence the Chapter 15 Cases is attached hereto as Exhibit 4.

36.     In addition, pursuant to sections 1521(a)(4) and (5) of the Bankruptcy Code, the Foreign Representative is requesting that this Court grant the Foreign Representative authority to examine witnesses, take evidence, and deliver information concerning the Debtors and their business, and entrust the administration or realization of all of the Debtors' assets within the territorial jurisdiction of the United States to the Foreign Representative.[6]

## Recognition of the Japan Proceeding Is Appropriate

37.     Chapter 15 of the Bankruptcy Code is designed to protect assets located in the United States that belong to a foreign debtor that has commenced insolvency proceedings in a foreign jurisdiction.  The relief afforded to a foreign debtor under chapter 15 is intended to prevent the dismemberment of such debtor's United States-based businesses and avoid disruptions that could otherwise derail a debtor's restructuring in its home country.

38.     Consistent with these principles, the Foreign Representative commenced ancillary proceedings for the Debtors under chapter 15 of the Bankruptcy Code to obtain recognition of the Japan Proceeding.  The Foreign Representative anticipates that the Chapter 15 Cases will complement the Debtors' primary proceedings in Japan to ensure the effective and economic administration of the Debtors' restructuring efforts.  Further the Foreign Representative submits that recognition of the Japan Proceeding will not undermine the rights that United States creditors typically would enjoy in a chapter 11 proceeding, as all creditors will have the right to prosecute their claims and vote on the Debtors' ultimate reorganization plan in the Japan Proceedings.

39.     Accordingly, the Foreign Representative submits that recognition of the Foreign Representative as the Debtors' "foreign representative," and recognition of the Japan

---

[6]     The Debtors reserve the right to request further relief pursuant to section 1521 of the Bankruptcy Code prior to the hearing on the Petition.

Proceeding as a "foreign main proceeding," are consistent with the purpose of chapter 15 and will allow the Debtors to restructure in the most efficient manner without jeopardizing the creditors' rights.

**I.      The Japan Proceeding Should Be Reorganized as a Foreign Main Proceeding**

  **A.      The Japan Proceeding Is a Foreign Main Proceeding**

  40. Section 101(23) of the Bankruptcy Code defines a "foreign proceedings" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. §101(23).

  41. Although chapter 15 was enacted in 2005, and thus, courts have not yet developed substantial precedent on the meaning of certain of chapter 15's statutory provisions, at least one court has opined on the factors necessary to demonstrate that a proceeding constitutes a "foreign proceeding." In In re Betcorp Ltd., 400 B.R. 266, 277 (Bankr. D. Nev. 2009), for instance, the court examined chapter 15's legislative history as well as the *Model Law on Cross-Border Insolvency*—which ultimately formed the basis for Congress' enactment of chapter 15—and disaggregated section 101(23) of the Bankruptcy Code into a seven-factor test to determine whether a proceeding constitutes a "foreign proceeding" for purposes of section 101(23) of the Bankruptcy Code. Specifically, the court found that the elements of a "foreign proceeding" are that the proceeding must be a proceeding:

    a. in which "acts and formalities [are] set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice;"

    b. that has either a judicial or an administrative character;

<ol type="a" start="3">
<li value="c">that is collective in nature, in the sense that the proceeding considers the rights and obligations of all creditors;</li>
<li value="d">that is located in a foreign country;</li>
<li value="e">that is authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor that has commenced such proceedings is not actually insolvent;</li>
<li value="f">in which the debtor's assets and affairs are subject to the control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding; and</li>
<li value="g">which proceeding is for the purpose of reorganization or liquidation.</li>
</ol>

See Betcorp, 400 B.R. at 275-82; see also In re Overnight and Control Commission of Avánzit, S.A., 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (discussing factors).

42.     As further supported by the facts discussed in the Katayama Declaration, the Debtors' proceeding in the Tokyo District Court, commenced to restructure the Debtors' financial obligations clearly meets the requirements to constitute a "foreign proceeding" for purposes of section 101(23) of the Bankruptcy Code.

43.     *First*, the Japan Proceeding is a proceeding commenced pursuant to the JRA, a Japanese law that governs corporate reorganizations and that is specifically "intended to be used for the rehabilitation of large corporate debtors."  See, e.g., 3 Collier Int'l Bus. Insol. Guide ¶ 29.01[1][a].

44.     *Second*, the proceeding is "judicial," as it has been commenced before the Tokyo District Court and is thereafter subject to the day-to-day supervision of such court, in conjunction with the Trustees.  Importantly, the Tokyo District Court has been given nation-wide jurisdiction over corporate reorganization proceedings, and thus, the Foreign Representative submits that the Tokyo District Court properly has exercised jurisdiction over the Japan Proceedings.  See id. ¶ 29.01[2].

45. ***Third***, the Japan Proceeding is collective in nature in that all affected creditors are allowed to participate. In Betcorp., for instance, the bankruptcy court discussed the contrasts between a true collective proceeding, where such proceeding "considers the rights and obligations of all creditors" and a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor." See Betcorp., 400 B.R. at 281. Here, the Debtors have commenced the Japan Proceeding after consultation with various parties in interest, including their secured creditors and ETIC. In addition, certain creditors — depending on their rights under Japanese law — will be entitled to vote on the Debtors' ultimate plan of reorganization and received distributions thereunder. See 3 Collier Int'l Bus. Insol. Guide ¶ 29.05[9][a]. Importantly, the Japan Proceeding will not in any way prejudice many of the Debtors' creditors, much less prohibit their participation in the restructuring efforts, as the Debtors intend to pay and honor all outstanding obligations to their customers, vendors and employees in the ordinary course of business, including, without limitation, paying any trade claims as and when such claims come due, and to continue their frequent flyer program (i.e., JAL Mileage Bank program) to preserve their customers' mileage points and loyalty awards.

46. ***Fourth***, the Tokyo District Court, where the Japan Proceeding is pending, is located in Tokyo, a city in Japan, which is a foreign country.

47. ***Fifth***, as alluded to above, the JRA is the Japanese law governing corporate reorganizations such as the Japan Proceeding.

48. ***Sixth***, the Debtors' assets are subject to the supervision of the Tokyo District Court during the pendency of the insolvency proceeding.

17

49.     ***Finally***, the objective of the insolvency proceeding is reorganization.   The

Foreign Representative intends to submit, and indeed must submit, pursuant to the JRA, a plan of

reorganization within one year of the Petition Date, which will provide for a substantial de-

leveraging of the Debtors' balance sheets and return the Debtors' to profitability.    The

Foreign Representative therefore submits that the Debtors have commenced the Japan

Proceeding for the purpose of reorganization, as required by section 101(23) of the Bankruptcy

Code.   Cf. In re Avánzit, 385 B.R. at 53 3-34 (recognizing a "financial restructuring" as a

"reorganization" for purposes of the sections 101(23) and 1517 analysis, especially where debts

will be repaid through the plan at issue).

50.     Accordingly, as all of the criteria required by section 101(23) are satisfied, this

Court should find that the Japan Proceeding constitutes a "foreign proceeding" as required by

section 1517 of the Bankruptcy Code.

**B.      The Foreign Representative Is a "Foreign Representative" as Defined in the Bankruptcy Code**

51.     In addition to being a foreign proceeding as defined in the Bankruptcy Code, to

obtain recognition of a proceeding under chapter 15, the proceeding must have a foreign

representative.   See 11 U.S.C. § 1517.

52.     The Foreign Representative submits that the Chapter 15 Cases were commenced

by a duly appointed and authorized "foreign representative" within the meaning of

section 101(24) of the Bankruptcy Code.   Section 101(24) of the Bankruptcy Code provides as

follows:

> The term 'foreign representative' means a person or body,
> including a person or body appointed on an interim basis,
> authorized in a foreign proceeding to administer the reorganization
> or the liquidation of the debtor's assets or affairs or to act as a
> representative of such foreign proceeding.

K&E 16165153.20

11 U.S.C. § 101(24).

53.     The Tokyo District Court specifically authorized the Foreign Representative to commence this chapter 15 proceeding. Concurrently herewith and attached hereto, the Foreign Representative has filed a copy of the order entered by the Tokyo District Court commencing the Japan Proceeding and appointing the Foreign Representative and certain other entities as the Debtors' trustees and administrators in the Japan Proceedings. Thus, the Foreign Representative submits that it has met the requirements of section 101(24) of the Bankruptcy Code and is the Debtors' "foreign representative" as defined in that section. Cf. In re SPhinX, Ltd., 351 B.R. 103, 116-17 (Bankr. S.D.N.Y. 2006), aff'd 371 B.R. 10 (S.D.N.Y. 2007) (noting that the foreign representatives had submitted a "copy of the Cayman Court's order appointing them to administer the Debtors' winding up under the Companies Law and authorizing their commencement of these chapter 15 cases, thereby satisfying Bankruptcy Code section[] 101(24)").

### C.     The Japan Proceeding Is a Foreign Main Proceeding

54.     The Japan Proceeding also is a "foreign main proceeding" as such term is defined in section 1517(b)(1) of the Bankruptcy Code.

55.     Section 1517(b)(1) of the Bankruptcy Code provides that a "foreign main proceeding" is a "foreign proceeding" pending in the country where the debtor has its center of its main interests ("COMI"). 11 U.S.C. § 1517(b)(1). As further discussed above, the Japan Proceeding meets the definition of a "foreign proceeding" under section 101(23) of the Bankruptcy Code.

56.     Further, section 1516(c) of the Bankruptcy Code sets forth a presumption that, "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); see also In re Bear Stearns High-

19

Grade Structured Credit Strategies Master Fund, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), aff'd 389 B.R. 325 (S.D.N.Y. 2008); In re Tradex Swiss AG, 384 B.R. 34, 43 (Bankr. D. Mass. 2008); SPhinX, Ltd., 351 B.R. at 117 (noting that the debtors' center of main interests were presumed to be the Cayman Islands, where the debtors were registered).

57.     The Bankruptcy Code itself does not define the meaning of COMI.  However, courts that have considered this issue generally have equated it to the United States concept of "principal place of business," relevant in venue determinations under sections 1408 and 1410 of title 28 of the United States Code.  See, e.g., Bear Stearns High-Grade Structured Credit Strategies Master Fund, 389 B.R. 325, 336 (S.D.N.Y. 2008) (noting that "[a]n early bankruptcy court decision that addressed the determination of COMI specifically discusses the [regulation adopting the EU Convention on Insolvency Proceedings] language and properly equates it to the United States' concept of 'principal place of business'" (citing In re Tri-Continental Exch. Ltd., 349 B.R. 627, 629 (Bankr. E.D. Cal. 2006) (same)).

58.     In addition, the court in Bear Stearns identified certain factors that are relevant in determining a debtor's COMI or principal place of business.  Specifically, the court examined: (a) the location of the debtor's headquarters; (b) the location of those persons or entities that actually manage the debtor (which, in certain instances, could be the headquarters of a holding company); (c) the location of the debtor's primary assets; and (d) the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case.  See Bear Stearns, 389 B.R. at 336 (citing SPphinX, Ltd., 351 B.R. at 117); see also In re Tradex, 384 B.R. at 43; In re Betcorp, 400 B.R. at 287-88 (discussing Bear Stearns, Tradex and certain European insolvency law cases for COMI analysis).

K&E 16165153.20

59.     Here, under all the relevant criteria, Japan is the Debtors' COMI.  As set forth in the Katayama Declaration:

a.      the Debtors, along with the overwhelming majority of the Debtors' non-debtor affiliates, are incorporated in Japan.

b.      the Debtors' head office is located at 4-11, Higashi-shinagawa 2-chome, Shinagawa-ku, Tokyo 140-8637, Japan;

c.      the Debtors are primarily controlled by, and decision-making is made from, their principal place of business in Japan;

d.      the majority of the Debtors' employees reside in Japan;

e.      the majority of the Debtors' assets are located in Japan;

f.      the majority of the Debtors' creditors are located in Japan; and

g.      all of the Debtors' administrative functions, including accounting, financial reporting, budgeting, and cash management are conducted in Japan.

60.     Further, although the Debtors have issued bonds that are held worldwide and although other creditors of the Debtors are located in the United States and other countries, the Debtors' principal secured creditors, including the Bank of Tokyo-Mitsubishi UFJ, Ltd., Mizuho Corporate Bank, Ltd., Sumitomo Mitsui Banking Corporation and DBJ, which, in the aggregate hold over $7 billion in secured debt obligations, all reside in ,and have their principal places of business, in Japan.  Indeed, given the overwhelming presence of the Debtors' operations and creditors in Japan, if this Court were not to find that Japan is the Debtors' COMI, it would be difficult to imagine where the Debtors should have filed their reorganization proceedings instead.

61.     Accordingly, the Foreign Representative respectfully submits that this Court should find that Japan is the Debtors' COMI.[7]  Thus, this Court should recognize the Japan Proceeding as a "foreign main proceeding" under section 1517(b) of the Bankruptcy Code.

---

[7]   In addition, the Foreign Representative notes that recognition of the Japan Proceeding and any orders that issue from the Tokyo District Court during the pendency of the Japan Proceeding, would not be "manifestly contrary

21

## II. The Proposed Notice and Request for a Hearing on the Petition Is Appropriate

62. Bankruptcy Rule 2002(q)(1) provides that a party is to be given 21 days' notice of a hearing to consider granting the relief requested in a chapter 15 petition. FED. R. BANKR. P. 2002(q)(1). Bankruptcy Rule 9007 permits this Court to prescribe the time, form and manner in which notice shall be given. FED. R. BANKR. P. 9007.

63. The Foreign Representative requests that the Recognition Hearing be scheduled on a date that is the twenty-fourth (24th) day after the Petition Date or as soon thereafter as this Court may be available. This will provide the required 21 days' notice (plus any additional days for mailing). Notice of the hearing on the Petition will be provided to those parties required to receive notice pursuant to Bankruptcy Rule 2002(q) or their counsel and to other interested parties by sending them a copy of the Petition, supporting declarations, as well as the order to show cause requested by the Foreign Representative in the *Ex Parte Application for Order (A) Granting Provisional Relief and Injunction and (B) Scheduling Hearing*, filed

---

to the public policy of the United States" so as to justify this Court's exercise of its discretion under section 1506 of the Bankruptcy Code to refuse to recognize the Japan Proceedings. See 11 U.S.C. § 1506. Notably, bankruptcy courts that have addressed the "public policy exception" in section 1506 of the Bankruptcy Code have noted that the exception is narrow, even going so far as to hold that the absence of a jury trial right—a right embodied in the United States Constitution—in a foreign proceeding would not justify the court's refusal to recognize the foreign proceeding pursuant to the public policy excpetion under section 1506 of the Bankruptcy Code. See In re Ephedra Prods. Liability Litig., 349 B.R. 333, 349 (Bankr. S.D.N.Y. 2006).

Further, courts in the past have found that Japanese law generally is "consonant with and complementary to the principal features which govern the United States' Bankruptcy Code." See In re Petition of Kojima, 177 B.R. 696, 701-04 (Bankr. D. Colo. 1995) (granting petition of Japan bankruptcy proceeding and allowing commencement of ancillary proceeding under former section 304; "the Japanese Trustee has the right and authority to commence an ancillary proceeding and pursue his claims in the United States Bankruptcy Court"); see also Aino v. Maruko, Inc. (In re Maruko, Inc.), 200 B.R. 876, 884 (Bankr. S.D. Ca. 1996) ("This court reposes the highest confidence in the ability of the Tokyo District Court to fairly adjudicate these respective parties' rights.").

Finally, since Congress' enactment of chapter 15 of the Bankruptcy Code, courts in this and other districts have recognized similar Japan proceedings as "foreign main proceedings." See, e.g., In re Namirei-Showa Co., Ltd., Case No. 08-13256 (BRL) (Bankr. S.D.N.Y. Sept. 22, 2008); In re Spansion Japan Ltd., Case No. 09-11480 (KJC) (Bankr. D. Del. May 1, 2009); In re Three Estates Co., Ltd., Case No. 07-23597 (TH) (Bankr. E.D. Cal. Aug. 30, 2007); In re Yoshihiko Kokura, Case No. 06-00849 (RJF) (Bankr. D. Haw. Dec. 24, 2006); In re Katsumi Iida, Case No. 06-00376 (RJF) (Bankr. D. Haw. July 14, 2006); In re Gestion-Privee Location, L.L.C., Case No. 06-80071 (WLS) (Bankr. M.D.N.C. Feb. 24, 2006).

K&E 16165153.20

contemporaneously herewith, as well as such other information that will apprise interested parties of the provisional stay (if ordered), the status of the Chapter 15 Cases, and the schedule of further proceedings. The Foreign Representative proposes to notify parties by electronic mail, overnight delivery or otherwise by U.S. mail. Notice of the hearing on the Petition, as well as the Petition and accompanying papers filed contemporaneously herewith, also will be posted on a website to be established.

64. The above-described notice meets the requirements of Bankruptcy Rule 2002(q) because it is provided to the required parties within the proscribed time period, and it is also in keeping with this Court's "discretion to set the particularities of notice procedures" pursuant to Bankruptcy Rule 9007. See In re Pierce, 435 F.3d 891, 892 (8th Cir. 2006).

## Conclusion

65. The Foreign Representative respectfully submits that the Petition satisfies the requirements for the recognition of Eiji Katayama as the Debtors' "foreign representative," and for recognition of the Japan Proceeding as the Debtors' "foreign main proceeding" and requests entry of an order granting the relief requested herein. The Foreign Representative further respectfully requests entry of an order scheduling the Recognition Hearing and approving the form and manner of notice to interested parties.

## Satisfaction of Local Bankruptcy Rule 9013-1(a)

66. The Petition includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to the Petition. Accordingly, the Debtors submit that the Petition satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

K&E 16165153.20

## **Notice**

67.     The Foreign Representative has provided notice of the Petition, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee; (b) the Securities and Exchange Commission; (c) the Federal Aviation Administration; (d) the Federal Transit Administration; (e) all parties to litigation currently pending in the United States in which the Debtor is a party; (f) United States Department of Justice; (g) the indenture trustees for the Debtors' unsecured bonds; (h) the depository institution for the Debtors' ADRs; (i) the administrative agents for the Debtors' prepetition credit facilities; (j) the Debtors' aircraft lessors; (k) all airport authorities at which the Debtors have operations; and (l) all other parties against whom the Debtors are seeking preliminary relief pursuant to section 1519 of the Bankruptcy Code. In light of the relief requested, the Foreign Representative submits that no further notice is necessary.

## **No Prior Request**

68.     No prior request for the relief sought in this Motion has been made to this or any other court.

K&E 16165153.20

WHEREFORE, the Foreign Representative respectfully requests entry of an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as is just and proper.

New York, New York
Dated: January 19, 2010

/s/ David R. Seligman
James H.M. Sprayregen, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

- and -

David R. Seligman, P.C. (*pro hac vice* pending)
Ryan Blaine Bennett (*pro hac vice* pending)
Paul Wierbicki (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

Counsel to the Foreign Representative

25

<u>**EXHIBIT A**</u>

**Proposed Recognition Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 15 |
| | ) | |
| JAPAN AIRLINES CORPORATION, et al., | ) | Case No. 10-[_____] |
| Debtors in a Foreign Proceeding¹ | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | (Joint Administration Requested) |

## ORDER PURSUANT TO
## 11 U.S.C. §§ 1504, 1515, 1517 AND 1520 RECOGNIZING
## FOREIGN REPRESENTATIVE AND FOREIGN MAIN PROCEEDING

Upon the *Verified Petition for Recognition and Chapter 15 Relief* (the "Petition")²

seeking (a) recognition of the Foreign Representative as the "foreign representative" as defined

in section 101(24) of the Bankruptcy Code of the above-captioned debtors (collectively, the

"Debtors"); and (b) recognition of the Debtors' reorganization proceedings under Japanese law

currently pending before the Tokyo District Court, Civil Department No. 8 (the

"Japan Proceeding"), as a foreign main proceeding pursuant to sections 1515 and 1517 of 11

U.S.C. §§ 101-1532 (the "Bankruptcy Code"); and upon the hearing on the Petition and this

Court's review and consideration of the Petition, the Katayama Declaration, and the

Nishi Declaration; IT IS HEREBY FOUND AND DETERMINED THAT:³

---

1      The Debtors in these chapter 15 cases are: Japan Airlines Corporation, Japan Airlines International Co., Ltd., and JAL Capital Co., Ltd. The location of the Debtors' corporate headquarters and the service address for all of the Debtors is: JAL Building, 2-4-11 Higashi Shinagawa, Shinagawa-ku, Tokyo, Japan, Attn: Legal Department.

2      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Petition.

3      The findings and conclusions set forth herein and in the record of the hearing on the Petition constitute this Court's findings of facts and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

1.      This Court has jurisdiction to consider the Petition and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501.

2.      The consideration of the Petition and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1410(1) and (3).

4.      Good, sufficient, appropriate and timely notice of the filing of the Petition and the hearing on the Petition has been given by the Foreign Representative, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to:  (a) the Office of the United States Trustee: (b) the Securities and Exchange Commission; (c) the Federal Aviation Administration; (d) the Federal Transit Administration; (e) all parties to litigation currently pending in the United States in which the Debtor is a party; (f) United States Department of Justice; (g) the indenture trustees for the Debtors' unsecured bonds; (h) the depository institution for the Debtors' American depository receipts; (i) the administrative agents for the Debtors' prepetition credit facilities; (j) the Debtors' aircraft lessors; (k) all airport authorities at which the Debtors have operations; and (l) all other parties against whom the Debtors are seeking preliminary relief pursuant to section 1519 of the Bankruptcy Code.

5.      No objections or other responses were filed that have not been overruled, withdrawn or otherwise resolved.

6.      The Chapter 15 Cases were properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

7.      The Foreign Representative is a "person" pursuant to section 101(41) of the Bankruptcy Code and is the "foreign representative" of the Debtors as such term is defined in

section 101(24) of the Bankruptcy Code, and the Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).

8.      The Japan Proceeding is pending in Japan, where the Debtors' "center of main interests," as referred to in section 1517(b)(1) of the Bankruptcy Code, of the Debtors is located, and accordingly, the Japan Proceeding is a "foreign main proceeding" pursuant to section 1502(4) of the Bankruptcy Code, and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(l) of the Bankruptcy Code.

9.      The Foreign Representative is the duly appointed foreign representative of the Debtors within the meaning of section 101(24) of the Bankruptcy Code.

10.     The Foreign Representative is entitled to all the relief provided pursuant to sections 1520 and 1521(a)(4) and (5) of the Bankruptcy Code without limitation, because those protections are necessary to effectuate the purposes of chapter 15 of the Bankruptcy Code and to protect the assets of the Debtors and the interests of the Debtors' creditors.

BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Petition is granted.

2.      The Japan Proceeding is recognized as a foreign main proceeding pursuant to section 1517(a) and 1517(b)(l) of the Bankruptcy Code, and all the effects of recognition as set forth in section 1520 of the Bankruptcy Code shall apply.

3.      Upon entry of this Order, pursuant to section 1520 of the Bankruptcy Code, the Japan Proceeding shall be given its full force and effect and, among other things:

        a.      the protections of sections 361 and 362 of the Bankruptcy Code apply to
                the Debtors and their assets in the United States;

K&E 16165153.20

b. all persons and entities are enjoined from seizing, attaching and/or enforcing or executing liens or judgments against the Debtors' property in the United States or from transferring, encumbering or otherwise disposing of or interfering with the Debtors' assets or agreements in the United States without the express consent of the Foreign Representative; and

c. all persons and entities are enjoined from commencing or continuing, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Debtors or their assets or proceeds thereof.

4. The Foreign Representative and the Debtors shall be entitled to the full protections and rights enumerated under section 1521(a)(4) and (5) of the Bankruptcy Code, and accordingly, the Foreign Representative:

a. is entrusted with the administration or realization of all or part of the Debtors' assets located in the United States; and

b. has the right and power to examine witnesses, take evidence or deliver information concerning the Debtors' assets, affairs, rights, obligations, or liabilities.

5. The Foreign Representative is hereby established as the representative of the Debtors with full authority to administer the Debtors' assets and affairs in the United States, including, without limitation, making payments on account of the Debtors' prepetition and postpetition obligations.

6. The banks and financial institutions with which the Debtors maintain bank accounts or on which checks are drawn or electronic payment requests made in payment of prepetition or postpetition obligations are authorized and directed to continue to service and administer the Debtors' bank accounts without interruption and in the ordinary course and to receive, process, honor and pay any and all such checks, drafts, wires and automatic clearing house transfers issued, whether before or after the Petition Date and drawn on the Debtors' bank

K&E 16165153.20

accounts by respective holders and makers thereof and at the direction of the Foreign Representative or the Debtors, as the case may be.

7.      The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

8.      The Foreign Representative, the Debtors and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

9.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.      This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through the Chapter 15 Cases, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

New York, New York
Date: _____, 2010


_____
                  United States Bankruptcy Judge

K&E 16165153.20

## EXHIBIT 1

### English-Translated Form of Public Announcement

## Announcement of Filing of Application for Support from the Enterprise Turnaround Initiative Corporation of Japan and ETIC's Decision to Support Our Restructuring; Filing of Petition for Commencement of Corporate Reorganization Proceedings and Court's Decision on Commencement of the Proceedings

Today, Japan Airlines Corporation, Japan Airlines International Co., Ltd. and JAL Capital Co., Ltd. (collectively, "JAL" or "we") filed an application to obtain the support of the Enterprise Turnaround Initiative Corporation of Japan ("ETIC") for JAL's restructuring pursuant to Article 25, Paragraph 1 of the Enterprise Turnaround Initiative Corporation Act and promptly received ETIC's decision to provide support. Also, today JAL filed petitions for commencement of corporate reorganization proceedings with the Tokyo District Court (the "Court"). The Court entered an order commencing the proceedings and appointed ETIC and Eiji Katayama, Esq., as reorganization trustees ("Trustees").

ETIC's financial support provides JAL with ample liquidity to maintain its operations and implement its long-term restructuring. Hereafter, we, together with ETIC's support, the Court's supervision and the Trustees' leadership, intend to expeditiously implement a comprehensive restructuring plan, which will revitalize JAL's business and ensure our long-term viability.

Thank you for your understanding and cooperation, as we move forward with this process. We fully expect that both JAL --- and our relationship with you --- will be stronger because of it. .

1.  Background of the Filing of the Application to ETIC and ETIC's Decision to Support JAL's Restructuring

Since it was established in 1953, JAL group has been providing high-quality air transportation services based on safe and timely operations mainly through international airline networks. After the merger of Japan Airline Corporation and Japan Air System Co., Ltd. in 2002, JAL group acquired a 66% market share of international airline services and a 46% market share of domestic airline services in Japan and, as the largest airline company in Japan providing around 1,100 daily regular flights, has contributed to the convenience of domestic and international flight users as well as to public interests.

However, since the beginning of this century, several incidents such as the September 11th attacks in the U.S., the Iraq War and the outbreak of Severe Acute Respiratory Syndrome (SARS) have contributed to the decline in demand especially for international flight services, which significantly affected JAL group, and our financial condition has become continuously more precarious.

In addition, there was a decline in tourism demand due to unprecedented soaring fuel prices and high fuel surcharges, and the financial crisis that occurred in the fall of 2008, which pushed the world economy into an unprecedented global recession. JAL group also suffered a significant decline in sales due mainly to a decline in demand for international passenger service for business users and sudden decline in demand for international cargo service. As a result of such

circumstances, in June of 2009, JAL group received an emergency loan in an amount of 100 billion yen from the Development Bank of Japan ("DBJ"), a government-designated financial institution.

Under such business circumstances, on October 29, 2009, the "JAL Task Force", a professional group consisting of business restructuring specialists and established by the Minister of Land, Infrastructure, Transport and Tourism for the purpose of facilitating JAL group's restructuring, reported to the Minister of Land, Infrastructure, Transport and Tourism the results of their examinations stating that it would be appropriate for JAL group's corporate restructuring to be conducted with the support of ETIC.

As announced in the press release entitled "Announcement of Preliminary Consultation with the Enterprise Turnaround Initiative Corporation of Japan to Support Our Restructuring" dated October 29, 2009, JAL began prior consultations with ETIC regarding support for JAL group's restructuring and, as announced in the press release entitled "Announcement of Application for and Acceptance of Turnaround ADR Procedure" dated November 13, 2009, while pursuing the Turnaround ADR Procedures, JAL has continued to consult with ETIC. Today, after prior examination by ETIC, JAL filed, jointly with DBJ, Japan Bank for International Cooperation, Mizuho Corporate Bank, Ltd., The Bank of Tokyo-Mitsubishi UFJ, Ltd. and Sumitomo Mitsui Banking Corporation, an application to ETIC for support for JAL's restructuring and received ETIC's decision to provide support. ETIC is a joint-stock corporation established and authorized by the Japanese government to provide support for the revitalization of certain corporations as stipulated by laws. JAL will receive public support for its revitalization by this decision.

2.    Reason for Filing Petitions for Commencement of Corporate Reorganization Proceedings

JAL also filed petitions for commencement of corporate reorganization proceedings.  Because JAL will receive public support from ETIC, JAL will use the corporate reorganization proceedings to ensure that its restructuring is conducted pursuant to transparent and fair procedures.

3.    Total Amount of Liabilities (as of September 30, 2009)

| | |
|---|---|
| Japan Airlines Corporation | ●billion yen |
| Japan Airlines International Co., Ltd. | ●billion yen |
| JAL Capital Co., Ltd. | ●billion yen |

4.    Court Decision on Commencement of Corporate Reorganization Proceedings and Future Outlook

Today, the Court granted the order commencing JAL's corporate reorganization proceedings and appointed ETIC and Eiji Katayama, Esq., as Trustees for the proceedings. Also, today the Trustees obtained comprehensive Court approval, authorizing JAL's continued payment of certain commercial transaction claims, including payments for fuel and other supplies and services, as well as for aircraft leases and other related obligations. Hereafter, with the support from ETIC, under the supervision of the Court and leadership of the Trustees, JAL will continue to to maintain safe and stable flight operations, while effectuating the revitalization of JAL group's business.

The anticipated schedule for the corporate reorganization proceedings is as follows:

| | |
|---|---|
| Period for Submission of Reorganization Claims (*Kosei Saiken*). etc. | until March 19, 2010 |
| Deadline for Approval/Disapproval of Submitted Claims | April 30, 2010 |
| General Examination Period for Reorganization Claims, etc. | from May 10, 2010 to May 24, 2010 |
| Period for Submission of Written Comments for Selection of the Trustees | until February 19, 2010 |
| Deadline for Submission of Report, etc. (Article 84, Paragraph 1 of the Corporate Reorganization Proceedings Act) from Trustees | March 19, 2010 |
| Deadline for Submission of Proposed Restructuring Plan (Related Parties) | May 31, 2010 |
| Deadline for Submission of Proposed Restructuring Plan (Trustees) | June 30, 2010 |

(Note) the above schedule may be modified depending on the status of the proceedings.

5. Application for Examination of Restructuring Plan, etc. prescribed in Article 605, Paragraph 1 of the Securities Listing Regulations of the Tokyo Stock Exchange, Article 3-2, Paragraph 1 of the delisting criteria of the Osaka Securities Exchange or Article 3-2, Paragraph 1 of the delisting criteria of the Nagoya Stock Exchange.

JAL decided not to submit applications for the Examination of Restructuring Plans.

(Reference)

Japan Airlines Corporation

 1. Overview of Petition

   (1) Date of Filing Petition: January 19, 2010

   (2) Court of Competent Jurisdiction: Tokyo District Court

   (3) Case Name: Case No. 1 of 2010 (*mi*), Petition for Commencement of Corporate Reorganization Proceedings

   (4) Filing Agent: Nishimura & Asahi
       Attorneys: Kenichi Minami, Esq. and 16 other attorneys

 2. Overview of the Company

| | |
|---|---|
| (1) Trade Name | Japan Airlines Corporation |
| (2) Address of Head Office | 2-4-11, Higashi Shinagawa, Shinagawa-ku, Tokyo |
| (3) Establishment | October 2, 2002 |
| (4) Representative | Haruka Nishimatsu, Representative Director, President |
| (5) Business of JAL Group | Air Transportation Business, Airline-Related Business, Travel Services Business, Credit Card and Leasing Services Business |
| (6) Paid-in Capital (*Shihon-kin*) | 251,000,000,000 yen |
| (7) Total Issued and Outstanding Shares | 3,346,383,250 shares |
| | Number of Ordinary Shares: 2,732,383,250 shares |
| | Number of Class A Shares: 614,000,000 shares |

   (8) Shareholders (as of September 30, 2009)

     (a) Ordinary Shares     Total Number of Shareholders: 459,814

| Names of Major Shareholders | Number of Shares (thousand shares) | Shareholding Ratio (%) |
|---|---|---|
| Tokyu Corporation | 80,428 | 2.94 |
| Tokio Marine & Nichido Fire Insurance Co., Ltd. | 70,188 | 2.57 |
| Nissay Dowa General Insurance Co., Ltd. | 43,076 | 1.58 |
| Japan Trustee Services Bank, Ltd. (trust account) | 42,957 | 1.57 |
| JAL Group Employees' Stockholding | 37,017 | 1.35 |
| Mizuho Corporate Bank, Ltd. | 35,303 | 1.29 |
| The Bank of Tokyo-Mitsubishi UFJ, Ltd. | 34,772 | 1.27 |
| Eitaro Itoyama | 32,500 | 1.19 |
| The Master Trust Bank of Japan, Ltd. (trust account) | 29,418 | 1.08 |
| Shin Nihon Kanko Co., Ltd. | 26,500 | 0.97 |

(b) Class A Shares        Total Number of Shareholders:    15

| Names of Shareholders | Number of Shares (thousand shares) | Shareholding Ratio (%) |
|---|---|---|
| Mizuho Corporate Bank, Ltd. | 80,000 | 13.03 |
| Development Bank of Japan Inc. | 80,000 | 13.03 |
| Mitsui & Co., Ltd. | 80,000 | 13.03 |
| The Bank of Tokyo-Mitsubishi UFJ, Ltd. | 68,000 | 11.07 |
| Sojitz Corporation | 60,000 | 9.77 |
| Mitsubishi Corporation | 60,000 | 9.77 |
| UBS Securities Japan Ltd. | 40,000 | 6.51 |
| Sumitomo Mitsui Banking Corporation | 22,000 | 3.58 |
| Idemitsu Kosan Co., Ltd. | 20,000 | 3.26 |
| ITOCHU Corporation | 20,000 | 3.26 |
| Japan Energy Corporation | 20,000 | 3.26 |
| Nippon Oil Corporation | 20,000 | 3.26 |
| Sumitomo Corporation | 20,000 | 3.26 |
| Marubeni Corporation | 20,000 | 3.26 |
| Cosmo Oil Co., Ltd. | 4,000 | 0.65 |

(9) Directors and Auditors

| | |
|---|---|
| Representative Director, President | Haruka Nishimatsu |
| Representative Director, Executive Vice President | Katsuhiko Nawano |
| Representative Director, Executive Vice president | Tetsuya Takenaka |
| Representative Director, Executive Vice President | Kiyoshi Kishida |
| Managing Director | Toshio Annaka |
| Managing Director | Shunichi Saito |
| Managing Director | Masaaki Haga |
| Director | Kunio Hirata |
| Director | Yoshimasa Kanayama |
| Director | Toshinari Oshima |
| Director | Chihiro Tamura |
| Director | Tetsuo Takahashi |
| Director | Hiroyasu Omura |
| Director (Outside Director) | Kunio Ishihara |
| Corporate Auditor | Teruhisa Ishizawa |
| Corporate Auditor | Hideo Hiramoto |
| Corporate Auditor (Outside Auditor) | Hirokazu Horinouchi |
| Corporate Auditor (Outside Auditor) | Masatake Matsuda |
| Corporate Auditor (Outside Auditor) | Hiroshi Suzuki |
| Corporate Auditor (Outside Auditor) | Hideyuki Sakai |

(10) Employees    6 secondees from Japan Airlines International Co., Ltd. and 6 temporary staff (as of September 30, 2009)

(11) Labor Union    None

(12) Total Liabilities (as of September 30, 2009)　●

(13) Financial Highlights for Past Three Years

(Consolidated) (million yen)

|  | Financial Year Ended March 31, 2007 | Financial Year Ended March 31, 2008 | Financial Year Ended March 31, 2009 |
|---|---|---|---|
| Sales | 2,301,915 | 2,230,416 | 1,951,158 |
| Operating Profit | 22,917 | 90,013 | ▲50,884 |
| Ordinary Profit | 20,576 | 69,817 | ▲82,177 |
| Net Profit | ▲16,267 | 16,921 | ▲63,194 |

(Non-Consolidated) (million yen)

|  | Financial Year Ended March 31, 2007 | Financial Year Ended March 31, 2008 | Financial Year Ended March 31, 2009 |
|---|---|---|---|
| Sales | 21,808 | 16,595 | 18,495 |
| Operating Profit | 8,594 | 1,092 | 3,394 |
| Ordinary Profit | 8,573 | 1,011 | 3,517 |
| Net Profit | 8,742 | 1,167 | 2,959 |

Japan Airlines International Co., Ltd.

1. Overview of Petition

(1) Date of Filing Petition: January 19, 2010

(2) Court of Competent Jurisdiction:　Tokyo District Court

(3) Case Name: Case No. 2 of 2010 (*mi*), Petition for Commencement of Corporate Reorganization Proceedings

(4) Filing Agent:　Nishimura & Asahi
Attorneys:　Kenichi Minami, Esq. and 16 other attorneys

2. Overview of the Company

| | |
|---|---|
| (1) Trade Name | Japan Airlines International Co., Ltd. |
| (2) Address of Head Office | 2-4-11, Higashi Shinagawa, Shinagawa-ku, Tokyo |
| (3) Establishment | October 1, 1953 |
| (4) Representative | Haruka Nishimatsu, Representative Director, President |
| (5) Main Business | Air Transportation Business, Cargo Business, etc. |
| (6) Paid-in capital (*Shihon-kin*) | 200,000,000,000 yen |
| (7) Total Issued and Outstanding Shares | Ordinary Shares: 3,829,361,418 shares |

| (8) Shareholders | Total Number of Shareholders: 1 (as of September 30, 2009) Major Shareholder: Japan Airlines Corporation 100% | |
|---|---|---|
| (9) Directors and Auditors | Representative Director, President | Haruka Nishimatsu |
| | Representative Director, Executive Vice President | Katsuhiko Nawano |
| | Representative Director, Executive Vice president | Tetsuya Takenaka |
| | Representative Director, Executive Vice President | Kiyoshi Kishida |
| | Managing Director | Toshio Annaka |
| | Managing Director | Shunichi Saito |
| | Managing Director | Masaaki Haga |
| | Director | Kunio Hirata |
| | Director | Yoshimasa Kanayama |
| | Director | Toshinari Oshima |
| | Director | Chihiro Tamura |
| | Director | Tetsuo Takahashi |
| | Director | Hiroyasu Omura |
| | Director (Outside Director) | Kunio Ishihara |
| | Corporate Auditor | Teruhisa Ishizawa |
| | Corporate Auditor | Hideo Hiramoto |
| | Corporate Auditor (Outside Auditor) | Hirokazu Horinouchi |
| | Corporate Auditor (Outside Auditor) | Masatake Matsuda |
| | Corporate Auditor (Outside Auditor) | Hiroshi Suzuki |
| | Corporate Auditor (Outside Auditor) | Hideyuki Sakai |
| (10) Employees | Number of Employees: 15,943 (as of September 30, 2009) | |
| (11) Labor Union | JAL Labor Union Japan Airlines Labor Union JAL Flight Crew Union Japan Airlines Cabin Crew Union Japan Airlines Captain Association Japan Airlines Senior Engineer Union Japan Airlines Domestic Labor Union Japan Airlines Domestic Pilot Union | |
| (12) Total Liabilities (as of September 30, 2009) | ● | |

(13) Financial Highlights for Past Three Years

(million yen)

| | Financial Year Ended March 31, 2007 | Financial Year Ended March 31, 2008 | Financial Year Ended March 31, 2009 |
|---|---|---|---|
| Sales | 1,582,792 | 1,735,035 | 1,664,700 |

| | | | |
|---|---|---|---|
| Operating Profit | 3,121 | 69,438 | ▲62,588 |
| Ordinary Profit | 29 | 46,602 | ▲95,787 |
| Net Profit | ▲24,257 | ▲6,771 | ▲68,132 |

JAL Capital Co., Ltd.

1. Overview of Petition

  (1) Date of Filing Petition: January19, 2010

  (2) Court of Competent Jurisdiction:  Tokyo District Court

  (3) Case Name: Case No. 3 of 2010 (*mi*), Petition for Commencement of Corporate Reorganization Proceedings

  (4) Filing Agent:  Nishimura & Asahi
                      Attorneys:  Kenichi Minami, Esq. and 16 other attorneys

2. Overview of the Company

| | | |
|---|---|---|
| (1) | Trade Name | JAL Capital Co., Ltd. |
| (2) | Address of Head Office | 2-4-11, Higashi Shinagawa, Shinagawa-ku, Tokyo |
| (3) | Establishment | July 25, 1988 |
| (4) | Representative | Yoshimasa Kanayama, Representative Director, President |
| (5) | Main Business | Finance Business, General Lease Business, etc. |
| (6) | Paid-in capital (*Shihon-kin*) | 3,500,000,000 yen |
| (7) | Total Issued and Outstanding Shares | Ordinary Shares: 70,000 shares |
| (8) | Shareholders | Total Number of Shareholders: 1 (as of September 30, 2009) Major Shareholders: Japan Airlines Corporation 100% |
| (9) | Directors and Auditors | |

| | |
|---|---|
| Representative Director, President | Yoshimasa Kanayama |
| Representative Director, Executive Vice President | Toshihide Nakamura |
| Managing Director | Toshio Akama |
| Managing Director | Kazumi Inoue |
| Director | Tatsuro Sunaga |
| Director | Isamu Jinguji |
| Corporate Auditor (Outside Auditor) | Koichi Baba |
| Corporate Auditor (Outside Auditor) | Teruhisa Ishizawa |
| Corporate Auditor (Outside Auditor) | Toshio Takahashi |

| | | |
|---|---|---|
| (10) | Employees | Number of Full Time Employees: 24; Secondees: 5 |

Contract Employees: 4
Temporary Staff: 2
(as of October 1, 2009)

(11) Labor Union      None

(12) Total Liabilities
(as of September ●
30, 2009)

(13) Financial Highlights for Past Three Years

(million yen)

| | Financial Year Ended March 31, 2007 | Financial Year Ended March 31, 2008 | Financial Year Ended March 31, 2009 |
|---|---|---|---|
| Sales | 43,114 | 48,128 | 44,489 |
| Operating Profit | 1,420 | 1,696 | 1,348 |
| Ordinary Profit | 1,428 | 1,701 | 1,350 |
| Net Profit | 792 | 1,205 | 752 |

End.

## EXHIBIT 2

**Commencement Order in the Japan Proceeding**

平成２２年（ミ）第１号乃至第３号　会社更生事件

<center>決　　　　　定</center>

当事者の表示　　別紙当事者目録記載のとおり

<center>主　　　　　文</center>

1　開始前会社について更生手続を開始する。

2　管財人に次の者を選任する。

　　　　東京都千代田区大手町一丁目６番１号

　　　　　　株式会社企業再生支援機構

　　　　東京都中央区八重洲二丁目８番７号　福岡ビル９階

　　　　　　片　山　英　二

3　管財人は，それぞれ単独にその職務を行うことができる。

4　更生債権等の届出をすべき期間等を次のとおり定める。

　(1)　更生債権等の届出をすべき期間

　　　　　平成２２年３月１９日まで

　(2)　認否書の提出期限

　　　　　平成２２年４月３０日まで

　(3)　更生債権等の一般調査期間

　　　　　平成２２年５月１０日から同月２４日まで

5　更生会社，更生債権者等，株主，労働組合等が，管財人の選任について書面により意見を述べることができる期間を次のとおり定める。

　　　　　平成２２年２月１９日まで

6　更生計画案の提出期間を次のとおり定める。

　(1)　管財人が更生計画案を提出すべき期間

<center>1</center>

平成２２年６月３０日まで

(2)　更生会社並びに届出をした更生債権者等及び株主が更生計画案を提出することができる期間

　　　　　　平成２２年５月３１日まで

7　管財人は，会社更生法に定めるもののほか，次の行為をしなければならない。

(1)　会社更生法８４条１項に規定する報告書を平成２２年３月１９日までに裁判所に提出すること。

(2)　毎月，更生会社の業務及び財産の管理状況について，報告書及び損益計算書を作成し，翌月末日までに，報告書に損益計算書の写しを添付して裁判所に提出すること。

(3)　更生手続開始時における財産評定前の貸借対照表を作成後速やかに裁判所に提出すること。

(4)　会社更生法８３条３項の規定による貸借対照表及び財産目録を作成後速やかに裁判所に提出すること。

(5)　更生計画案作成の時における清算価値及び継続企業価値による資産総額を記載した書面並びに更生手続開始後更生計画案作成時に至るまでの期間における損益計算書を作成して，更生計画案とともに裁判所に提出すること。

8　管財人は，次の行為をするには，裁判所の許可を得なければならない。

(1)　更生会社が所有又は占有する財産に係る権利の譲渡，担保権の設定，賃貸その他一切の処分（常務に属する取引に関する場合を除く。）

(2)　更生会社の有する債権について譲渡，担保権の設定その他一切の処分（更生会社による取立てを除く。）

(3)　財産の譲受け（商品の仕入れその他常務に属する財産の譲受けを除く。）

(4)　貸付け

(5)　借財（銀行との当座貸越契約に基づくものを除く。）及び保証

(6)　訴えの提起及び保全，調停，支払督促その他これらに準ずるものの申立て並

びにこれらの取下げ

(7) 和解又は仲裁合意（仲裁法（平成１５年法律第１３８号）２条１項に規定する仲裁合意をいう。）

(8) 債務免除，無償の債務負担行為及び権利の放棄

(9) １０億円を超える共益債権を生じさせる行為で常務に属しないもの

(10) 更生担保権に係る担保の変換（更新された火災保険契約に係る保険金請求権に対する担保変換としての質権の設定を除く。）

(11) 更生会社の事業の維持更生の支援に関する契約及び当該支援をする者の選定業務に関する契約の締結

理　　　　　由

一件記録によれば，開始前会社には，会社更生法１７条１項所定の更生手続開始の原因となる事実があると認められ，他方，同法４１条１項各号に掲げる事由があるとは認められない。

よって，本件申立ては理由があるので主文第１項のとおり決定し，併せて会社更生法４２条１項，６９条１項，７２条２項，８４条２項，８５条４項，１４６条３項，１８４条１項及び２項，会社更生規則５１条１項の規定に基づき，主文第２項から第８項までのとおり決定する。

平成２２年１月１９日午後５時３０分

東京地方裁判所民事第８部

裁判長裁判官　　　菅　野　博　之

裁判官　　　渡　部　勇　次

裁判官　　　馬　渡　直　史

3

別　紙

<div align="center">当　事　者　目　録</div>

平成２２年（ミ）第１号

　　東京都品川区東品川二丁目４番１１号

　　　　　　申立人（開始前会社）　　　　株　式　会　社　日　本　航　空

　　　　　　代 表 者 代 表 取 締 役　　　西　　　松　　　　　遙

平成２２年（ミ）第２号

　　東京都品川区東品川二丁目４番１１号

　　　　　　申立人（開始前会社）　　　　株式会社日本航空インターナショナル

　　　　　　代 表 者 代 表 取 締 役　　　西　　　松　　　　　遙

平成２２年（ミ）第３号

　　東京都品川区東品川二丁目４番１１号

　　　　　　申立人（開始前会社）　　　　株式会社ジャルキャピタル

　　　　　　代 表 者 代 表 取 締 役　　　金　　山　　佳　　　正

　　　　　　上記３社申立人代理人弁護士　南　　　　　賢　　　一

　　　　　　同　　　　　　　　　　　　　森　　　　　倫　　　洋

　　　　　　同　　　　　　　　　　　　　宮　　崎　　信 太 郎

　　　　　　同　　　　　　　　　　　　　上　　野　　　　　元

　　　　　　同　　　　　　　　　　　　　柴　　原　　　　　多

　　　　　　同　　　　　　　　　　　　　金　　山　　伸　　宏

　　　　　　同　　　　　　　　　　　　　福　　岡　　真 之 介

　　　　　　同　　　　　　　　　　　　　郡　　谷　　大　　輔

　　　　　　同　　　　　　　　　　　　　柳　　田　　一　　宏

　　　　　　同　　　　　　　　　　　　　湯　　川　　雄　　介

　　　　　　同　　　　　　　　　　　　　松　　原　　大　　祐

| 同 | | 舞 | 田 | 靖 | 子 |
| 同 | | 築 | 留 | 康 | 夫 |
| 同 | | 信 | 夫 | 大 | 輔 |
| 同 | | 髙 | 橋 | 洋 | 行 |
| 同 | | 澤 | | 陽 | 男 |
| 同 | | 紺 | 田 | 哲 | 司 |

以　上

これは謄本である。

平成２２年１月１９日

東京地方裁判所民事第８部

裁判所書記官　手　嶋　健　一　郎 

## EXHIBIT 3

## English Translation of Commencement Order

&lt;English translation for reference only&gt;

Case No. (mi) 1 through 3 of 2010

Case of Corporate Reorganization

Decision

Parties:   As specified in the appended inventory of parties

Main Text

1.　　The corporate reorganization proceedings for the Debtors shall commence.

2.　　The person and entity as below shall be appointed as trustees:

> 1-6-1 Otemachi, Chiyoda-ku, Tokyo
> Enterprise Turnaround Initiative Corporation of Japan
>
> Fukuoka Building 9th Floor, 2-8-7 Yaesu, Chuo-ku, Tokyo
> Eiji Katayama

3.　　Each trustee may conduct his/its duty solely.

4.　　The periods such as for filing reorganization claims, etc. shall be specified as follows:

> (1)　　The period for filing reorganization claims, etc. : Until March 19, 2010;
> (2)　　The date for admission or denial for filed reorganization claims, etc. to be made: By April 30, 2010; and
> (3)　　The period for ordinary investigation of filed reorganization claims, etc. : From May 10, 2010 to May 24, 2010

5.　　The period during which the Debtors, creditors, shareholders, the labor's union, etc. may state its/their opinion in writing with respect to the appointment of trustees shall be specified as follows:

> Until February 19, 2010

6.　　The period for the submission of the proposed reorganization plan shall be specified as follows:

> (1)　　The period during which the trustees should submit their proposed reorganization plan;
> Until June 30, 2010
> (2)　　The period during which the Debtors, creditors who have made a filing of reorganization claims, etc., and shareholders may submit its/their proposed reorganization plan;

Until May 31, 2010

7. The trustees shall conduct the following acts in addition to those provided for in the Corporate Reorganization Act:

(1) Submit to the court a written report provided for in Paragraph 1 of Article 84 of the Corporate Reorganization Act before March 19, 2010;

(2) Prepare a written report and profit and loss statement with respect to the management of the Debtors' business and property every month, and submit the written report, accompanied by a copy of profit and loss statements, to the court by the last day of the next month;

(3) Prepare a balance sheet before the evaluation of property at the time of commencing the corporate reorganization proceedings, and thereafter promptly submit it to the court;

(4) Prepare a balance sheet and an inventory of property under Paragraph 3 of Article 83 of the Corporate Reorganization Act, and thereafter promptly submit them to the court;

(5) Prepare a document stating the total amount of assets based on liquidation value and going concern value at the time of preparing a proposed reorganization plan, and a profit and loss statement during the period until the time of preparing a proposed reorganization plan after commencing the corporate reorganization proceedings, and submit them to the court with a proposed reorganization plan;

8. The trustees shall obtain the approval of the court in order to conduct the following acts:

(1) Assigning, creating security interests, leasing, and any other disposition (excluding those regarding transactions which fall within the scope of ordinary business) of rights pertaining to assets owned or possessed by the Debtors.

(2) Assigning, creating security interests, and any other disposition (excluding collection by the Debtors) of claims owned by the Debtors.

(3) Acquiring property (excluding purchasing goods and other acquisitions of property which fall within the scope of ordinary business);

(4) Lending money;

(5) Borrowing money (excluding borrowing based on the contract for overdraft) and guarantees;

(6) Filing and withdrawing a lawsuit, petition for relief, mediation, demand for payment, and the other equivalent thereto;

(7) Making a settlement or an arbitration agreement (meaning an arbitration agreement provided for in Paragraph 1 of Article 2 of the Arbitration Act (Act No. 138 of 2003)) ;

(8) Releasing an obligation, assuming a debt without consideration, or waiving a right;

(9) Action which causes a common benefit claim exceeding 1 billion JPY and which does not fall within the scope of the ordinary business;

(10) Exchanging security related to a secured reorganization claim (excluding the creation of a pledge as exchange of security for an insurance claim related to a renewed fire insurance contract); and

2

(11)    Executing a contract regarding support of maintenance and reorganization of the
        Debtors' business, and a contract regarding service in relation to selecting those
        who provide such support.


### Grounds of the Decision

According to the case records, it is found that there are facts, on the part of the Debtors, which constitute cause for the commencement of corporate reorganization proceedings provided for in Paragraph 1 of Article 17 of the Corporate Reorganization Act, on the other hand, matters listed in each item of Paragraph 1 of Article 41 of the same Act are not found.

Based on the above, this Petition has justifiable grounds, so the court makes a decision as set forth in Paragraph 1 of the Main Text.  In addition, the court makes a decision as set forth in Paragraphs 2 through 8 of the Main Text under the provisions of Paragraph 1 of Article 42, Paragraph 1 of Article 69, Paragraph 2 of Article 72, Paragraph 2 of Article 84, Paragraph 4 of Article 85, Paragraph 3 of Article 146 and Paragraphs 1 and 2 of Article 184 of the Corporate Reorganization Act and Paragraph 1 of Article 51 of the Rules of Corporate Reorganization.

5:30 PM, January 19, 2010

Civil 8th Division of Tokyo District Court

|  | |
|---|---|
| Chief of Judge | [Hiroyuki Kanno] |
| Judge | [Yuji Watanabe] |
| Judge | [Naofumi Moutai] |

Exhibit

<p align="center">Inventory of Party</p>

Case No. (mi) 1 of 2010
Petitioner (Debtor): Japan Airlines Corporation
2-4-11 Higashi Shinagawa, Shinagawa-ku, Tokyo
Representative Director: Haruka Nishimatsu

Case No. (mi) 2 of 2010
Petitioner (Debtor): Japan Airlines International Co., Ltd.
2-4-11 Higashi Shinagawa, Shinagawa-ku, Tokyo
Representative Director: Haruka Nishimatsu

Case No. (mi) 3 of 2010
Petitioner (Debtor): JAL Captital Co., Ltd.
2-4-11 Higashi Shinagawa, Shinagawa-ku, Tokyo
Representative Director: Yoshimasa Kanayama

Nishimura & Asahi Law Offices
Ark Mori Building, 1-12-32 Akasaka, Minato-ku, Tokyo 107-6029 (address for service)
Phone   81-3-5562-8760
FAX     81-3-5561-9711

Attorneys representing the above Petitioners:
Kenichi Minami, Esq.
Mori  Michihiro, Esq.
Shintaro Miyazaki, Esq.
Hajime Ueno, Esq.
Masaru Shibahara, Esq.
Nobuhiro Kanayama, Esq.
Shinnosuke Fukuoka, Esq.
Daisuke Koriya, Esq.
Kazuhiro Yanagida, Esq.
Yusuke Yukawa, Esq.
Daisuke Matsubara, Esq.
Yasuko Maita, Esq.
Yasuo Tsukitome, Esq.
Daisuke Shinobu, Esq.
Hiroyuki Takahashi, Esq.
Akio Sawa, Esq.
Tetsushi Konda, Esq.

<p align="right">[End of Text]</p>

I, Trustee Eiji Katayama, confirm this to be as correct and accurate translation in English language as it be, of the court decision in Japanese language.
Dated: January 19, 2010

<p align="right">Eiji Katayama</p>

## <u>EXHIBIT 4</u>

**English Translation of the Certificate Authorizing
the Foreign Representative to Commence the Chapter 15 Cases**

<Translation>

Case Nos.:   2010 (mi) 1 through 3
Debtors:   Japan Airlines Corporation
            Japan Airlines International Co., Ltd.
            JAL Capital Co., Ltd.

Certificate of Approval

   I hereby certify that, on January 19, 2010, the Tokyo District Court approved the
Trustee to do the following, for which approval was sought in the Petition for Approval
Nos. 22-23, 22-24 and 22-25 in the case above.

      To file a petition for recognition of a foreign main bankruptcy
      proceeding under Chapter 15 of the United States Bankruptcy Code
      (including an application for provisional relief under Section 1519 of
      the United States Bankruptcy Code)

            January 19, 2010
                  Tokyo District Court Civil 8th division

                  Court Clerk   [            ]   [Seal]