# EXHIBIT B

**Final Report**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| JAPAN AIRLINES CORPORATION, et al., | ) Case No. 10-10198 (JMP) |
| Debtors in a Foreign Proceeding[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |

### FOREIGN REPRESENTATIVE'S FINAL STATUS REPORT

Eiji Katayama (the "Foreign Representative") as foreign representative to Japan Airlines Corporation ("JALC"), Japan Airlines International Co., Ltd. ("JALI") and JAL Capital Co., Ltd. ("JCAP" collectively with JALC and JALI, the "Debtors"), submits this final status report (this "Final Report") pursuant to Rule 5009(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on behalf of the Debtors in connection with the above-captioned chapter 15 cases (the "Chapter 15 Cases") and respectfully states as follows:

### Introduction

1.    The Foreign Representative[2] has determined that closing the Chapter 15 Cases is appropriate at this time.    Towards that end, and concurrently herewith, the Foreign Representative filed and served (i) the *Foreign Representative's Motion for Entry of Order Closing Chapter 15 Cases* (the "Case Closing Motion") and (ii) a certificate with the Court confirming that this Final Report has been served on the Office of the United States Trustee for

---

[1]    The Debtors in these Chapter 15 Cases are:  Japan Airlines Corporation, Japan Airlines International Co., Ltd., and JAL Capital Co., Ltd.  Pursuant to the Debtors' confirmed plan of reorganization, Debtors Japan Airlines Corporation and JAL Capital Co., Ltd. were merged into Debtor Japan Airlines International Co., Ltd.  Japan Airlines International Co., Ltd., the surviving entity, later was renamed Japan Airlines Co., Ltd.  The location of the Debtors' corporate headquarters and the service address for all of the Debtors is:  JAL Building, 2-4-11 Higashi Shinagawa, Shinagawa-ku, Tokyo, Japan, Attn: Legal Department.

[2]    Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this Final Report.

the Southern District of New York and parties in interest (collectively, the "Parties") receiving notice of the Case Closing Motion as required by Bankruptcy Rule 5009.

2.      Rule 5009(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides:

> A foreign representative in a proceeding recognized under § 1517 of the Code shall file a final report when the purpose of the representative's appearance in the court is completed. The report shall describe the nature and results of the representative's activities in the court. The foreign representative shall transmit the report to the United States trustee, and give notice of its filing to the debtor, all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor was a party at the time of the filing of the petition, and such other entities as the court may direct. The foreign representative shall file a certificate with the court that notice has been given. If no objection has been filed by the United States trustee or a party in interest within 30 days after the certificate is filed, there shall be a presumption that the case has been fully administered.

Fed. R. Bankr. P. 5009(c).

3.      The primary function of the Chapter 15 Cases was to support the Debtors' cross-border restructuring by protecting the Debtors (who did not file chapter 11 petitions) and their assets against unilateral stakeholder action in the United States. The Debtors' restructuring activities occurred primarily in the Japan Proceeding. As a result, after entry of the Recognition Order, the Foreign Representative limited its activities in the Chapter 15 Cases to filing reports, addressing motions seeking relief from the stay filed in the Chapter 15 Cases by certain parties in interest, coordinating certain issues arising in connection with certain antitrust litigation and other litigation pending in the United States and managing procedural matters relating to the Japan Proceeding.

4.      At this time, the primary purpose of the Chapter 15 Cases has been achieved.  The
Foreign Representative therefore believes that it no longer needs to make further appearances
before this Court, subject in all instances to preservation of the Foreign Representative's and the
Debtors' right to re-open the Chapter 15 Cases for cause including in the event that a creditor or
other party in interest subject to this Court's jurisdiction attempts to take action in violation of
the Debtors' confirmed plan or other orders entered in the Japan Proceeding and automatically
recognized by virtue of the Recognition Order.

5.      The Foreign Representative submits this Final Report, and has filed the Case
Closing Motion, without prejudice to move this Court to reopen the Chapter 15 Cases under
section 350 of the Bankruptcy Code to accord the Debtors whatever additional relief, if any, the
Debtors require consistent with the provisions of chapter 15 of the Bankruptcy Code.

6.      Pursuant to Bankruptcy Rule 5009(c), the United States Trustee and parties in
interest have thirty days from the date hereof to object to closure of the Chapter 15 Cases.  In the
event no such objections are filed, or such objections have been consensually resolved, the
Foreign Representative will seek entry of the proposed order attached to the Case Closing
Motion closing the Chapter 15 Cases.

## Background

7.      JALC and its subsidiaries and affiliates operate Japan Airlines, Japan's flagship
air carrier and Asia's largest airline by revenue.  JALC and its subsidiaries and affiliates carry
passengers and cargo to destinations worldwide and enjoy an unparalleled global reputation.
JALC and two of its wholly-owned subsidiaries, JALI and JCAP, are the three Debtors in the
Chapter 15 Cases.

8.    On January 19, 2010 (prevailing Tokyo time), the Debtors voluntarily filed for commencement of a corporate reorganization process in the Tokyo District Court, Civil Department No. 8 (the "Japan Proceeding"), under the Corporate Reorganization Act of Japan (*Kaisha Kosei Ho*).    In connection with commencement of the Japan Proceeding, the Tokyo District Court appointed the Foreign Representative and the Enterprise Turnaround Initiative Corporation of Japan as trustees in the Japan Proceeding, with full authority to administer the Debtors' assets and, ultimately, formulate a plan of reorganization.

### Final Report

### I.    Events Occurring in the Chapter 15 Cases

###    A.    Recognition of the Japan Proceeding

9.    During the preparation for the Japan Proceeding and the Chapter 15 Cases, the Debtors recognized that airlines with extensive international operations may become vulnerable to operational disruption in the restructuring context.[3]    Stakeholders in foreign countries, including creditors, government agencies, employees, lessors and suppliers, might have taken action against airline debtor's finances or assets in an attempt to extract value outside of the debtor's main home country proceeding.

10.    To better facilitate an efficient corporate restructuring in the Japan Proceeding, on January 19, 2010 (prevailing New York time) (the "Petition Date"), and to protect against

---

[3]    This Court itself and others have presided over some of the largest airline reorganizations over the past decade. *See, e.g., In re Delta Air Lines, Inc.*, Case No. 05-17923 (CGM) (Bankr. S.D.N.Y. Sept. 14, 2005), *In re Northwest Airlines Corp.,* Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. Sept. 14, 2005); *see also In re Alitalia Linee Aeree Italiane S.p.A.*, Case No. 08-14321 (BRL) (Bankr. S.D.N.Y. Nov. 3, 2008); *In re UAL Corp*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002).

In a particularly telling example of adverse creditor actions that can be taken against airline debtors in the restructuring context, in 2001 Swissair AG and the other entities comprising the SAirGroup began to encounter negative cash flow and lack of cash reserves and credit lines.    In September and October 2001, Swissair's lenders began to discontinue extensions of credit, and on October 1, 2001, Swissair announced its bankruptcy. Almost immediately, creditors began to exercise remedies against the company, including seizure of two aircraft at London's Heathrow airport.    Swissair's entire fleet eventually was grounded ultimately precipitating the company's liquidation proceedings.

adverse creditor action, the Foreign Representative sought certain protections in the United States pursuant to chapter 15 of title 11 of the United States Code (the "Bankruptcy Code").

11.     On February 17, 2010, the Court entered the *Order Pursuant to 11 U.S.C. §§ 1504, 1515, 1517 and 1520 Recognizing Foreign Representative and Foreign Main Proceeding* [Docket No. 49] (the "Recognition Order"), pursuant to which the Japan Proceeding was recognized as a "foreign main proceeding" pursuant to chapter 15 of the Bankruptcy Code. Moreover, the Court also recognized the Foreign Representative as the Debtors' "foreign representative" for Bankruptcy Code purposes, thereby authorizing the Foreign Representative to administer the Debtors' United States assets.

12.     The Recognition Order, among other things, (a) applied the automatic stay of section 362 of the Bankruptcy Code with respect to the Debtors and the property of the Debtors in the territorial jurisdiction of the United States and (b) further enjoined all persons and entities from commencing or continuing any judicial, administrative or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof that are located in the United States.[4]

---

[4]     The Debtors also sought similar protections under English, Australian and Canadian law.  Under English law, the proceeding was recognized by the Companies Court of the Chancery Divisions of the High Court of England and Wales as a "Foreign Main Proceeding" under Article 17(2)(a) of the UNCITRAL Model Law on Cross-Border Insolvency, which England has adopted pursuant to the Cross Border Insolvency Regulations 2006.  *See e.g., Re Japan Airlines International Co., Ltd.,* Case No. 1121/7010 [10 Feb. 2010], EWHC (Ch.). Entry of the recognition order by the High Court acted as a stay against commencement or continuation of proceedings against the Debtors execution against the Debtors' assets and transfer or disposal of the Debtors' assets and also resulted in appointment of the Foreign Representative as the Debtors' representative in England. *See Cross Border Insolvency Regulations 2006*, Sch. 1, Art. 20 § 1.  Under Australian Law, the proceeding has not yet been recognized.  The Debtors have filed documents to recognize the proceeding as a Foreign Main Proceeding under the *Cross-Border Insolvency Act* 2008.  The Australian recognition process, however, has been adjourned on a number of occasions pending resolution of certain Australian class action proceedings against a number of airlines including JAL.  While the class action itself has been settled, there are still a number of outstanding queries that must be addressed before the court can recognize the foreign proceeding. Under Canadian law the foreign proceeding was recognized on April 30, 2010.  *See Application Under Part IV of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended*, *In Re Japan Airlines Corporation* Court File No. CV-10-8692-00CL (Can.)  The JAL Plan (as defined below) was recognized by the Canadian court on June 8, 2011. *See Foreign Plan Recognition Order*, *In Re Japan Airlines Corporation*, Court File No. CV-10-8692-00CL (Can.)

### B.    Antitrust Matters Before the Court

13.    Prior to the Petition Date, the Debtors and various other international airlines were named as defendants in a number of class action lawsuits in the United States involving allegations of Federal antitrust violations regarding air cargo transportation and, separately, trans-pacific air passenger transportation.  Plaintiffs in both sets of lawsuits alleged price fixing and other violations of Sherman Act Section 1, 15 U.S.C. § 1, and sought treble damages, attorneys fees, and costs of suit under Clayton Act Section 16, 15 U.S.C. § 26.  The United States Judicial Panel on Multidistrict Litigation ("JPML") consolidated and transferred the air cargo lawsuits to the United States District Court for the Eastern District of New York (MDL No. 177) (the "Cargo Litigation") and the trans-pacific air passenger lawsuits to the Northern District of California (MDL No. 1913) (the "Passenger Litigation").[5]

14.    In the Cargo Litigation, after the filing of a First Consolidated Amended Complaint on February 8, 2007, all defendants, including the Debtors, moved to dismiss the complaint on various grounds.  On August 21, 2009, the court adopted a magistrate judge's recommendations, among others, to dismiss certain claims based on violations of competition laws of the European Union and all claims by indirect purchasers, but permitted claims under U.S. law by direct purchasers based on transportation to, from, or within the United States, wherever purchased, to proceed.

15.    In the Passenger Litigation, plaintiffs filed a Consolidated Class Action Complaint on August 6, 2009.  On September 22, 2009, the court granted the Debtors an extension of time until March 15, 2010, for the Debtors to respond.  On November 24, 2009, all

---

[5]    *See In re Air Cargo Shipping Services Antitrust Litig.*, Case No. 06-MD-1775 (JG) (VVP) (E.D.N.Y.); *In re Transpacific Passenger Air Transportation Antitrust Litig.*, Case No. 07-cv-05634-CRB (N.D. Cal.).

defendants other than the Debtors filed motions to dismiss claims against them on various grounds.

### (i)    Co-Defendants' Attempts to Extend Chapter 15 Stay

16.    During the course of the Chapter 15 Cases, certain co-defendants in the Cargo and Passenger Litigation sought to extend the injunction protections granted to the Debtors by this Court in the Recognition Order to all co-defendants in the underlying antitrust class action by filing motions requesting the stay of all further process in those proceedings.[6]

17.    At that time, the Debtors had been engaged in settlement negotiations on a unilateral basis with the class action plaintiffs.  To further this objective of bringing conclusive resolution to the Debtors' role in the Cargo and Passenger Litigation, the Foreign Representative coordinated with the plaintiffs' counsel to have the injunction limitations clarified such that the anti-trust class action proceeding would not be stayed with respect to the other co-defendants. On March 4, 2010, the Foreign Representative filed its *Notice of Presentment of Stipulation and Agreed Order Clarifying the Scope of the Stay with Respect to Certain Antitrust Litigation* [Docket No. 58] which requested an order by this Court clarifying that the chapter 15 injunction effectuated by the Recognition Order extended only to the Debtors and not their co-defendants in the Cargo and Passenger Litigation.

18.    The Debtors' co-defendants objected to the proposed order on March 15, 2010.[7] In their objections, the Debtors' co-defendants argued that the stay set forth in the Recognition

---

[6]    *See Notice of Administrative Motion and Motion Pursuant to L.R. 7-11 To Stay Proceedings Upon Notice of Injunction in* In Re: Japan Airlines, Case No. 07-cv-05634-CRB (N.D.CA) [Docket No. 344] Feb. 18, 2010.

[7]    *See Cargo Antitrust Litigation Defendant's Objections to Stipulation and Agreed Order Clarifying the Scope of the Stay with Respect to Certain Antitrust Litigation* [Docket No. 67]; *Passenger Antitrust Litigation Defendant's Objections to Stipulation and Agreed Order Clarifying the Scope of the Stay with Respect to Certain Antitrust Litigation* [Docket No. 68].

Order acted to suspend all proceedings "involving or against" the Debtors and that because the Cargo and Passenger Litigation "involved" the Debtors, those proceedings should be stayed.[8]

19.    On March 26, 2010, the antitrust air-cargo plaintiffs filed their *Response of Air Cargo Plaintiffs to Air Cargo Defendants' Objections to the Stipulation and Agreed Order Clarifying the Scope of the Stay with Respect to Certain Antitrust Litigation* [Docket No. 84]. They argued that the interpretation of the stay proposed by the co-defendants in their objections was unwarranted and that use of this Court's Recognition Order to shield the co-defendants from the pending litigation constituted an abuse of that order and the purposes of Chapter 15 of the Bankruptcy Code.   The antitrust passenger plaintiffs filed the *Passenger Antitrust Litigation Plaintiffs' Response Defendants' Objections to Stipulations and Agreed Order Clarifying the Scope of the Stay with Respect to Certain Antitrust Litigation* [Docket No. 85] on March 29, 2010, making similar arguments.    The Foreign Representative also filed the *Foreign Representative's Reply to Antitrust Co-Defendants' Objections to Lift Stay Stipulation* [Docket No. 86] in which it also argued that the protection given by chapter 15 of the Bankruptcy Code is designed to protect the Debtors and not the co-defendants.   Certain appellant parties to an appeal pending in the Court of Appeals for the Second Circuit which had been delayed due to the chapter 15 stay also filed a response to the objections.[9]

20.    On March 31, 2010, after notice and hearing, this Court entered the *Order Overruling Objections to Stipulated Order and Approving Stipulated Order* [Docket No. 91].

---

[8]    *Cargo Antitrust Litigation Defendants' Objections to Stipulation and Agreed Order Clarifying the Scope of the Stay with Respect to Certain Antitrust Litigation* [Docket No. 67];  *Passenger Antitrust Litigation Defendants' Objection to Stipulation and Agreed Order Clarifying the Scope of the Stay with Respect to Certain Antitrust Litigation* [Docket No. 68].

[9]    *See Response of United States Indirect Purchaser Appellants to Cargo Litigation Defendants' Objection to Stipulation and Agreed Order Clarifying the Scope of the Stay with Respect to Certain Antitrust Litigation* [Docket No. 87].

**(ii)      Settlement of the Antitrust Matters**

21.      After commencement of the Japan Proceeding, and as set forth in the *Status
Report of the Foreign Representative Regarding the Settlement of Certain Antitrust Litigation*
[Docket No. 106], the Debtors reached separate agreements in principle with the respective
plaintiffs in the Cargo and Passenger Litigation to settle claims against the Debtors in those
matters.

22.      On July 1, 2010, the Tokyo District Court authorized the Debtors to settle the
Cargo and Passenger Litigation.  The Debtors executed separate settlement agreements with the
respective plaintiffs in the Passenger Litigation dated as of July 6, 2010 (the "Passenger
Settlement"), and in the Cargo Litigation dated as of July 8, 2010 (the "Cargo Settlement").[10]

23.      The Cargo Settlement resolved all claims against the Debtors by direct purchasers
of air cargo transportation to, from, or in the United States during the period January 1, 2000,
through September 11, 2006.  The main terms of the Cargo Settlement were as follows:

- Plaintiffs agreed to release the Debtors from all antitrust claims relating to direct
  purchases of air freight transportation services during the period of the case;

- The Debtors agreed to pay $12 million into an escrow account, for subsequent
  distribution to qualified class members.  All attorneys fees, litigation costs, and costs
  of notifying class members and distributing funds to them must come from this "all-
  in" payment; and

- The Debtors agree to cooperate with plaintiffs by providing certain documents and
  information.

24.      On July 20, 2010, Plaintiffs filed a Motion for Preliminary Approval of the Cargo
Settlement.  The agreement was included as Exhibit A to that filing.  [1:06-md-01775-JG -VVP;
Docket No. 1212-1].  On March 3, 2011, the District Court issued the Order Approving Japan

---

[10]    Although Debtors Japan Airlines Corporation and JAL Capital Co., Ltd. were not defendants in either the Cargo
Litigation or the Passenger Litigation, they were included within the scope of the releases in both settlements.

Airlines International Co. Settlement Agreement And Entering Final Judgment.    [1:06-md-
01775-JG - VVP; Docket No. 1417].

25.    The Passenger Settlement resolved all claims against the Debtors by purchasers of
transpacific passenger transportation services occurring between January 1, 2000, through
February 1, 2010. *See*, 3:07-cv-05634 [Docket No. 402].    The main terms of the passenger
settlement were as follows:

- Plaintiffs agreed to release Debtors from all antitrust claims relating to purchases of
  transpacific passenger transportation services (excluding certain flights to or from
  Korea) during the period of the case;

- Debtors agreed to pay $10 million into an escrow account, for subsequent distribution
  to qualified class members, unless certain then-pending motions to dismiss were
  granted in full. *See*, 3:07-cv-05634 [Docket Nos. 287, 288, 290, 293, 294, 295, 299,
  300, 304, 310, 312] (collectively, the "Motions to Dismiss").    If the Motions to
  Dismiss were granted in full, then the Debtors would owe nothing.    All attorneys fees,
  litigation costs, and costs of notifying class members and distributing funds to them
  would come from any "all-in" payment; and

- Debtors agreed to cooperate with plaintiffs by providing certain documents, as well as
  certain readily available electronic data, help securing testimony from certain
  employees, and up to a certain number of hours of time with the Debtors' attorneys to
  provide an overview of information available.

26.    On May 9, 2011, the court presiding over the Passenger Litigation issued its
*Memorandum and Order Granting in Part and Denying in Part Motions to Dismiss* 3:07-cv-
05634 [Docket No. 467], partially granting and partially denying the Motions to Dismiss.    To
date, no motion to preliminarily approve the Passenger Settlement has been filed and the court
presiding over the Passenger Litigation has not yet opined on the fairness of the Passenger
Settlement.

27.    Subsequently, the Debtors and the plaintiffs in the Passenger Litigation agreed to
certain limited discovery, as contemplated in the Passenger Settlement.    Accordingly, on
December 1, 2011 the Foreign Representative filed the *Notice of Presentment of Stipulated*

*Order Modifying the Stay with Respect to Certain Antitrust Passenger Litigation* [Docket No. 143] proposing to lift the Chapter 15 stay to allow the Debtor to engage in discovery regarding the Passenger Litigation.  On April 19, 2012, this Court entered the *Stipulated Order Modifying the Stay with Respect to Certain Antitrust Passenger Litigation* [Docket No. 148].

## II.    Confirmation of Plan of Reorganization in Tokyo

28.    Subsequent to commencement of the Japan Proceeding, the Debtors and the Foreign Representative made considerable progress in effectuating a restructuring of the Debtors' finances and operations.  In particular, the Debtors reduced their route footprint and streamlined labor costs.  In addition, the Debtors and the Foreign Representative engaged in extensive negotiations with debt holders, ultimately resulting in reduction of ¥520 billion ($5.95 billion) in debt.  These efforts paid dividends.  On June 5, 2010, the Debtors announced that their consolidated financial forecast for the fiscal year ending March 31, 2011 anticipated a net operating profit of ¥22 billion ($251 million).

29.    On August 31, 2010, the Debtors filed a plan of reorganization (the "JAL Plan") in the Tokyo District Court.  On the same day, the Tokyo District Court submitted the JAL Plan to the Debtors' creditors for voting purposes.  Creditors were able to consider the JAL Plan from September 10, 2010 through November 19, 2010.  On November 22, 2010, the Debtors announced that 96% of creditors had voted to approve the JAL Plan, notwithstanding elimination of approximately ¥520 billion ($5.95 billion) in debt.  Notably, the JAL Plan also provided the Debtors with exit financing to fund distributions and going forward operations.  In particular, the Debtors would receive financing from the Enterprise Turnaround Initiative Corporation of Japan ("ETIC") in the amount of ¥350 billion ($4.11 billion), a measure that may not have been possible without the substantial progress achieved by the Debtors and the Foreign Representative

11

in the course of the Japan Proceeding.  In addition, the JAL Plan provided for the merger of Debtors Japan Airlines Corporation and JAL Capital Co., Ltd. into Debtor Japan Airlines International Co., Ltd.  Subsequently, Japan Airlines International Co., Ltd., the surviving entity, was renamed "Japan Airlines Co., Ltd."

30.    On November 30, 2010, the Tokyo District Court granted its final approval of the JAL Plan, entering a Confirmation Order (the "JAL Confirmation Order") and enabling the Debtors to overcome the final obstacle to returning their businesses to profitability.

31.    On March 3, 2011, this Court entered an order denying without prejudice a motion filed by the Foreign Representative seeking specific recognition of the JAL Confirmation Order.  At the hearing on the motion, the Court emphasized that it would enforce the Recognition Order entered at the commencement of these Chapter 15 Cases to bar any actions by creditors or other third parties taken in violation of the JAL Confirmation Order or that otherwise would frustrate its consummation.[11]

## III.    Ancillary Litigation

32.    In December 2010, Scott Sawyer, guardian ad litem for Wayne Sawyer, a minor (together, the "Sawyer Plaintiff"), filed a complaint in the Superior Court of the State of California, County of Los Angeles, alleging common law tort actions and statutory actions for civil conspiracy, intentional infliction of emotional distress negligent interference with parent child relationship and violation of California unfair competition law.  The Sawyer Plaintiff alleged that the Debtors and a travel agent co-defendant negligently facilitated the abduction of an American child to Japan.  The Sawyer Plaintiff also filed two amended complaints on

---

[11]    *See Hrg. Tr. Page 7 sentence 13, In re Japan Airlines Corp.,* Case No. 10-10198 (JMP) (Bankr. S.D.N.Y. March 1, 2011 [Docket No. 132].

April 12, 2011 and June 20, 2011, respectively.  On June 30, 2011, the Sawyer Plaintiff filed a proof of claim in this Court in the amount of $100,000,000.

33.    On July 20, 2011, the Debtors filed a motion to quash, arguing that a state court could not exercise jurisdiction over a cause of action arising prior to the Debtors' bankruptcy proceeding that had been addressed and compromised in the Debtors' Tokyo-based plan of reorganization.

34.    On September 2, 2011, the Sawyer Plaintiff filed a motion to quash arguing that the Debtors' motion improperly attacked the merits of the Sawyer Plaintiff's complaint rather than objecting to procedural issues.  On September 13, 2011, the Debtors filed a reply denying these allegations.

35.    On September 19, 2011, the California court issued a notice of tentative ruling and granted the Debtors' motion to quash confirming that the Debtors could not be served with legal process while protected by the automatic stay set forth in the recognition order and that it did not have personal jurisdiction over the Debtor.[12]

## IV.    Other Matters Before the Court Arising During the Chapter 15 Cases

### A.    Litigation Involving Former Employee

36.    On December 23, 2002, Martin Ventress ("Ventress") and a co-plaintiff filed suit against the Debtors and the Debtors' non-debtor affiliate, JALWays Co., Ltd., and another non-debtor, Hawaii Aviation Contract Services, Inc., in the United States District Court for the Central District of California for alleged violations of state labor laws, wrongful termination and infliction of emotional distress (the "District Court Litigation").  On July 23, 2003, the District Court Litigation was transferred to the United States District Court for the District of Hawaii (the

---

[12]    *Sawyer v. Japan Airlines International Co., Ltd.*, Case No. BC450970 (Sup. Ct. Cal. Sept. 19, 2011).

"Hawaii District Court").  *See Ventress v. Japan Airlines*, Case No. 2:02-cv-9762-NM(SHx),

Order Granting Motions to Transfer (C.D. Cal. Jul. 23, 2003).

37.    On October 25, 2004, the Hawaii District Court granted the Debtors' motion for

judgment on the pleadings, dismissing the Ventress' complaint on the grounds that Ventress'

claims were preempted by a Japanese-American friendship treaty.  *See Ventress v. Japan

Airlines*, Case No. 1:03-cv-00451-SPK-LEK, Order Granting Motion (D. Hawaii Oct. 25, 2004).

On November 18, 2004, Ventress filed his notice of appeal of the Hawaii District Court's

decision.  *See id.*  On April 24, 2007, the Ninth Circuit Court of Appeals (the "Ninth Circuit")

reversed the Hawaii District Court and remanded the District Court Litigation for further

proceedings.  *See Ventress v. Japan Airlines*, 486 F.3d 1111 (9th Cir. 2007).

38.    On April 22, 2008, the Hawaii District Court again granted a motion by the

Debtors for judgment on the pleadings, this time on the grounds that Ventress' claims were

preempted by the Federal Airline Deregulation Act of 1978.  *See Ventress v. Japan Airlines*,

Case No. 1:07-cv-00581 SPK-LEK (D. Hawaii Apr. 22, 2008).  Ventress filed a notice of appeal

on April 28, 2008.  *See id.*  On November 25, 2009, the Ninth Circuit issued an order stating that

Ventress' appeal would be submitted on the briefs and record, without oral argument.  *See

Ventress v. Japan Airlines*, App. Case No. 08-15731 (9th Cir. Nov. 25, 2009).  The Ninth Circuit

did not render judgment in the appeal prior to the filing of these Chapter 15 Cases.

39.    On February 9, 2010 Ventress filed a motion in this Court seeking to modify the

stay imposed by this Court's preliminary injunction order and the Bankruptcy Code to allow the

District Court Litigation to continue (the "Lift Stay Motion").    Counsel to the Foreign

Representative contacted Ventress repeatedly to propose to lift the stay imposed by the

Recognition Order to permit the Ninth Circuit to decide on the appeal.    Not receiving any

response, the Foreign Representative filed the *Foreign Representative's Limited Objection to Motion to Lift Automatic Stay* on February 12, 2010 to preserve its rights with respect to the Lift Stay Motion [Docket No. 44].

40.    On March 2, 2010, Ventress filed *Movant Martin Ventress' Objection to Foreign Representative's Limited Objection to Motion to Lift Automatic Stay* [Docket No. 56] and on March 8, 2010 the Foreign Representative filed the *Foreign Representative's Supplemental Objection to Motion to Lift Automatic Stay and Related Response* [Docket No. 62].

41.    On March 18, 2010, this Court entered a *Stipulation and Agreed Order Resolving Motion to Lift Stay* [Docket No. 77] in which it lifted the stay for the limited purpose of allowing the Ninth Circuit to render judgment on Ventress' appeal from the Hawaii District Court's *Order Granting JAL Defendants' Motion for Judgment On the Pleadings, and Denying Other Pending Motions as Moot* [Docket No. 111], which dismissed his complaint on Federal preemption grounds.

42.    On April 14, 2010, Ventress filed a *Motion to Compel Trustee to Determine Whether Debtor Japan Airlines was Movant's Employer or Co-Employer for the Purpose of Establishing Creditor Priority Pursuant to 11 U.S.C. § 507 and Other Related Matters* [Docket No. 94] seeking to establish Ventress' employment status and use that status as a way to gain priority in the bankruptcy process.  On April 30, 2010, the Foreign Representative filed its response, noting that any ruling on priority status from the Court would be irrelevant for purposes of the Japan Proceeding, as Japanese law, not U.S. chapter 15 or chapter 11, governs the filing and dispute of claims against a debtor in a Japanese insolvency proceeding.  *See* [Docket No. 100].  On May 18, 2010, this Court entered an Order denying Ventress' request [Docket No. 104].

43.    On December 21, 2010, Ventress filed an additional brief for relief of automatic stay. On February 12, 2010, the Foreign Representative entered the *Foreign Representative's Limited Objection to Motion to Lift Automatic Stay* [Docket No. 44]. In it, the Foreign Representative stated that it was seeking an amicable resolution with Ventress, and had filed the motion only out of an abundance of caution. Subsequently, on March 2, 2010 Ventress filed *Movant Martin Ventress' Objection to Foreign Representative's Limited Objection to Motion to Lift Automatic Stay* [Docket No. 56] in which Ventress reasserted his claim for relief from the automatic stay. Subsequent to this objection, Ventress and the Foreign Representative reached a consensual agreement regarding a limited lifting of the automatic stay. On March 16, 2010, the parties filed the *Notice of Presentment of Stipulation and Agreed Order Resolving Motion to Lift Stay* and, accordingly, on February 17, 2011, this Court entered the *Stipulation and Agreed Order Resolving Motion to Lift Stay*, which lifted the stay imposed by the Recognition Order for the sole purpose of allowing Ventress to continue his litigation before the Hawaii District Court under *Ventress v. Japan Airlines et. al.* [Docket No. 129].

### B.    KLL Proceeding

44.    On March 25, 2010, "K" Line Logistics, Ltd. ("<u>KLL</u>"), a customer of the Debtors engaged in cargo transportation, filed the *Motion of "K" Line Logistics, Ltd. and "K" Line Logistics (USA), Inc. for Relief from Automatic Stay* [Docket No. 82].

45.    In 2007, KLL had transported cargo consisting of a TEL Telius SP SCCM Etching System using JALC airplanes. The cargo was damaged and both KLL and the Debtors were sued by the subrogated underwriters, Allianz Maritime & Aviation Versicherungs AG and Allianz Corporate & Specialty AG (together "<u>Allianz</u>"). In turn, KLL asserted cross claims against the Debtors. In its motion, KLL requested that this Court lift the automatic stay in order

to allow the action to continue in the United States District Court for the Central District of California.

46.    On April 19, 2010, the Debtor filed the *Foreign Representative's Objection to Lift Stay Motion of "K" Line Logistics, Ltd. and "K" Line Logistics (USA), Inc.* [Docket No. 95]. The Debtor argued that the stay should not be lifted as there were not sufficient grounds for lifting the stay and it would interfere with the Japanese restructuring proceeding.

47.    On April 27, 2010, this Court entered the *Order Denying Motion of "K" Line Logistics, Ltd. and "K" Line Logistics (USA), Inc. for Relief from Automatic Stay* [Docket No. 99] upholding the injunction except for the limited purpose of permitting execution of certain settlement agreements in the civil court action that the parties agreed to suggest to their clients in mediation.

### C.    Tjoen-Tak-Seu Proceeding

48.    Hitomi Tjoen-Tak-Seu, a child under the age of 14 represented by her father and guardian Timothy Tjoen-Tak-Seu, (together "<u>Tjoen-Tak-Seu</u>"), was burned by hot liquids, allegedly due to the negligence of the Debtors in serving beverages on board.  On September 24, 2009, Tjoen-Tak-Seu initiated a personal injury action in the Supreme Court of the State of New York, County of Richmond.  The case was later removed to the United States District Court for the Eastern District of New York.

49.    On July 21, 2010, Tjoen-Tak-Seu filed a *Motion for Relief from Stay Filed by Steven W. Epstein on Behalf of Hitomi and Timothy Tjoen-Tak-Seu* [Docket No. 105] requesting relief from the chapter 15 stay to continue the lawsuit.

50.    The Foreign Representative and Tjoen-Tak-Seu ultimately agreed to resolve the matter consensually.  On September 1, 2010, this Court entered the *Stipulation and Agreed*

*Order Resolving Motion to Lift Stay* [Docket No. 111]. In the order, the Court lifted the stay to allow for certain types of discovery including the taking of a deposition of the Plaintiff, administering a medical examination of the Plaintiff and allowing the Plaintiff to submit one discovery request seeking production from the Debtors of written manuals or handbooks produced solely by the Debtors that governs the service of the Debtors' flight attendant employees of hot liquids to passengers aboard flights.

### D.    Stiles Proceeding

51.    On or about February 7, 2008, Nevis Stiles ("<u>Stiles</u>"), while working as a ticket agent for Saudi Arabian Airlines at John F. Kennedy International Airport, allegedly sustained personal injuries due to the Debtors' alleged negligence. Stiles subsequently filed suit against the Debtors in the Supreme Court of the State of New York, County of Queens.

52.    On June 24, 2011, Stiles filed a *Proposed Motion for Relief from Stay Pursuant to 11 USC 362(d) Filed by Paul B. Edelman on Behalf of Nevis Stiles* [Docket No. 135] requesting relief from the stay to pursue her personal injury claim.

53.    The Foreign Representative and Stiles agreed to resolve the matter consensually. On April 19, 2010 this Court entered the *Stipulation and Agreed Order Resolving Motion to Lift Stay* [Docket No. 147] under which the Debtor and Stiles agreed to lift the stay for the limited purpose of allowing the state court litigation to go forward.

<u>Conclusion</u>

54.    The Debtors commenced their in-court restructuring at the height of the global financial crisis and in a jurisdiction not accustomed to the "mega-bankruptcies" that have been a hallmark of the U.S. chapter 11 regime. The Debtors' bankruptcy filing was the largest in

Japanese history for a non-financial services company[13] and gave rise to considerable doubts as to the Debtors' long-term viability among investors, the Japanese public and the Debtors' customers.  Less than a year after commencing the Japan Proceeding, however, and under the guidance of the Foreign Representative and with the benefit of the protections afforded by this Court, the Debtors had emerged from bankruptcy as a profitable enterprise, ultimately re-listing on the Tokyo Stock Exchange in 2012.

55.    Internationally, the Debtors encountered few obstacles and nearly none of the disruption that has characterized bankruptcy filings undertaken by other international airlines. Their success in this respect is due in part to the relief accorded to the Debtors by this Court and by courts in other jurisdictions, in which the Foreign Representative sought similar relief.  In light of the considerable progress made by the Debtors and the Foreign Representative in the Japan Proceeding and the authority accorded by the Bankruptcy Code to re-open chapter 15 cases as necessary to enforce the rights of affected parties thereto, the Foreign Representative submits that the purposes of the Chapter 15 Cases are now complete and respectfully requests that the Court close those cases.

---

[13]  *Source:  Financial Times.*

New York, New York
Dated:  September 16, 2013

/s/ *Ryan Blaine Bennett*
James H.M. Sprayregen, P.C,
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

    - and -

Ryan Blaine Bennett (admitted *pro hac vice*)
Paul Wierbicki (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Counsel to the Foreign Representative